P. H. CRAIG v. JONAS KESSING AND WIFE, ALICE KESSING, AND GORDON
BLACKWELL AND JACK CARLISLE

No. 7715SC521

(Filed 6 June 1978)

1. **Vendor and Purchaser § 1— option to purchase—definiteness as to price, time of payment**

    An option to purchase was sufficiently definite as to the purchase price and the time for payment to satisfy the statute of frauds, G.S. 22-2, where it stated the duration of the option, stated that the purchase price for the property was $14,000, and listed how the various elements of the purchase price should be paid and applied.

2. **Principal and Agent § 1; Vendor and Purchaser § 1— power of attorney—signing wife's name on option**

    The trial court erred in finding that the male defendant forged his wife's signature to an option agreement where the evidence showed that his wife had executed a valid power of attorney granting the male defendant the authority to deal with the property on her behalf.

3. **Seals § 1— equity—necessity for consideration**

    Where equitable relief is sought, the court will go back of the seal on an instrument and will refuse to act unless the seal is supported by consideration.

4. **Vendor and Purchaser § 1— option contract—consideration—seeking buyer**

    Although plaintiff did not pay any money for an option to purchase land, the option was supported by valuable consideration where plaintiff was obligated, in good faith, to seek a buyer for the land.

5. **Evidence § 32.2— parol evidence—agreement not completed when executed**

    Parol evidence was incompetent to show that a written option agreement was not completed when executed.

6. **Vendor and Purchaser § 1— option agreement—completeness**

    Specific performance of an option agreement will not be denied because the "Other Conditions" section of the agreement was uncompleted but contained the unexplained notation "1.T."

7. **Duress § 1; Vendor and Purchaser § 1— option agreement—fairness of price—economic duress**

    The evidence did not support the court's conclusions that the purchase price in an option agreement was unfair or that the seller executed the option under economic duress.

8. **Vendor and Purchaser § 5— option to purchase—specific performance**

    Plaintiff was entitled to specific performance of an option to purchase land where the vendor had previously conveyed the land to another for $5,000 but had been given an option to repurchase for $5,200; the option to purchase obligated the vendor to use $5,200 of the purchase price to exercise the option

to repurchase; the vendor subsequently conveyed his option to repurchase to another; and all parties had actual knowledge of the option given by the vendor to the plaintiff.

**9. Rules of Civil Procedure § 26— deposition—party not in lawsuit when taken**

Although the deposition of one defendant was not admissible against a second defendant who was not a party to the lawsuit and was not present or represented by counsel when the deposition was taken, it was admissible against the defendant who made it. G.S. 1A-1, Rule 26(d).

Judge MARTIN concurs in the result.

APPEAL by plaintiff from *Walker (Ralph A.), Judge.* Judgment entered 1 April 1977, in Superior Court, ORANGE County. Heard in the Court of Appeals 29 March 1978.

In September 1966, plaintiff and defendant Jonas Kessing jointly purchased a 63.54 acre tract of land near Chapel Hill from Jerry Leggett and wife. Toward the $55,000 purchase price, plaintiff and Kessing each paid one-half of the $15,000 down payment, and they executed a purchase money deed of trust and promissory note to Leggett and wife for $40,000, the remaining balance. The deed of trust called for quarterly payments of approximately $1,440.

In the spring of 1968, Kessing was in extreme financial difficulty. On 31 May 1968, Kessing and wife executed a document which is purportedly a deed for one-half interest in the 63.54 acre tract of land to defendant Gordon Blackwell. In exchange for this document, Kessing received $5,000 from Blackwell. On the same day Kessing also received from Blackwell a document entitled "Option to Purchase," the terms of which allowed Kessing and wife to re-purchase, at any time on or before 31 July 1968, the one-half interest in the 63.54 acre tract for $5,200.

During the week of 18 June 1968, Kessing sought plaintiff's aid in alleviating some of his financial problems. On or about 26 June 1968, Kessing and plaintiff executed an option to purchase agreement, the document around which this case revolves. After the execution of the option agreement, plaintiff made efforts to locate a buyer for Kessing's interest in the property. He located a woman who lived in Fairmont, North Carolina, and on or about 28 June 1968, plaintiff and Mrs. Martha H. Beech entered into a contract of sale whereby Mrs. Beech agreed to purchase from Craig a

one-third interest in 48.54 acres, a smaller portion of the larger tract which he and Kessing owned.

By 3 July 1968, plaintiff had received approximately $14,000 from Mrs. Beech. Craig notified Kessing that he was ready to close on the option contract, and a closing time was initially set for 3 July, but defendant Kessing postponed the closing on several occasions. On 8 July, Craig went to Raleigh to meet with defendants Kessing, Blackwell and Carlisle and with an attorney. Plaintiff tendered the $14,000 called for in the option agreement, but the money was rejected. On 10 July, plaintiff again met with the four men in Raleigh and again his tender was rejected. Craig was given a letter by which the Kessings rescinded, for lack of consideration, the Craig option to purchase.

On 11 July, the Kessings executed a document entitled "Contract" which purportedly assigned to Blackwell the 31 May 1968 option agreement in which the Kessings had been given an option to re-purchase the one-half interest in the 63.54 acre tract.

On 26 July, plaintiff again met with Kessing and tendered to him a certified check for $14,000. Kessing refused to accept the check. The next day plaintiff wrote and hand-delivered a letter to the Kessings giving notice that he accepted the option agreement. On 30 July, plaintiff mailed a certified copy of the same letter to the Kessings. Plaintiff also notified defendant Blackwell by letter and by telegram that he was exercising his option.

On 2 August 1968, plaintiff instituted litigation in this matter by filing Notice of Lis Pendens. On 3 April 1969, Blackwell conveyed his interest in the land to defendant Carlisle who, at the time of the trial of this case, claimed ownership of one-half interest in the Orange County land. On 21 April 1970, plaintiff filed complaint seeking specific performance of the option contract. The trial judge made findings of fact and conclusions of law and denied relief to plaintiff. Plaintiff appeals.

*Powe, Porter, Alphin & Whichard, by Charles R. Holton, for plaintiff appellant.*

*Hatch, Little, Bunn, Jones, Few & Berry, by David H. Permar, for defendant appellee Jack Carlisle.*

ARNOLD, Judge.

## I.

[1]   This appeal first presents the issue of whether the trial court correctly concluded that the disputed option agreement was void for failure to comply with the statute of frauds. None of the defendants pleaded the statute as required by G.S. 1A-1, Rule 8(c), but the trial court, nonetheless, addressed this affirmative defense. Since plaintiff has claimed no surprise by the trial court's action, the issue will be considered as though properly raised. *See* Wright & Miller, Federal Practice and Procedure: Civil § 1278.

The statute of frauds, G.S. 22-2, is applicable to option contracts for the purchase of property, *Carr v. Good Shepherd Home*, 269 N.C. 241, 152 S.E. 2d 85 (1967). Is, therefore, the option agreement in this record, which is "in writing and signed by the party to be charged therewith, or by some other person by him thereto lawfully authorized," G.S. 22-2, a sufficient contract or memorandum to comply with the statute? It is.

In essence, a memorandum or note is an informal and imperfect instrument. *Lane v. Coe*, 262 N.C. 8, 136 S.E. 2d 269 (1964). It must contain expressly or by necessary implication the essential features of an agreement to sell. *Id.* The option agreement in question named the parties to the agreement, contained a description of the land, and a statement of the period of time for exercising the option. Also, the names of the parties were signed on the agreement. The trial court specifically concluded that the agreement was not sufficiently definite as to the purchase price and the time for payment. That conclusion is erroneous. The contract stated that

"THE TERMS AND CONDITIONS OF THIS OPTION are as follows:

"1. This option shall begin on the 26 day of June, 1968, and shall continue and exist through 12:00 noon the 31 day of July, 1968.

"2. The purchase price for said property shall be Fourteen Thousand + (Illegible) Dollars ($14,000), less the sum

paid for this option and any extension(s) or renewal(s) thereof, and shall be paid as follows:

"$700.00 for reimbursing the June (1/2) payment

"5200.00 to purchase option from Blackwell to Kessing

"5600.00 cash at time of closing; 2500.00 upon sale of 15 acres of the zoned apartment land."

This is clearly sufficient to withstand the application of the statute of frauds.

[2] The trial court also found:

"10. Jonas Kessing forged his wife's signature to the disputed option agreement without prior consultation with her and without her express permission."

However, the record contains a copy of a valid and uncontested power of attorney granted by Alice H. Kessing to Jonas W. Kessing and recorded on 12 August 1963, prior to the June 1968 option agreement. The power of attorney recites in part that Jonas W. Kessing had the authority to

"[S]ell or mortgage any real estate now or hereafter belonging to me; and execute such deeds, contracts, mortgages, deeds of trust, notes or bonds as may be necessary, convenient or incident to the exercise of any authority hereinbefore given to my said Attorney."

A copy of this document establishing power of attorney in Jonas Kessing was identified by Kessing and was introduced into evidence as Plaintiff's Exhibit 12. Further, defendant Kessing stated on cross-examination:

"I did testify under oath at my deposition that every decision concerning this land which has been made has been made by me acting for myself and my wife. I did testify that I agreed that she was bound by whatever actions I took. In my deposition I did stipulate that I had authority to deal with this property."

It thus appears that the trial court erred in finding that Jonas Kessing forged the signature of his wife. The document was, in law, signed by the parties to be charged and in that respect complied with the statute of frauds.

## II.

[3] Plaintiff further assigns as error the following finding by the trial court:

> "While the disputed option agreement recites 'that the seller, for and in consideration of the sum of Fourteen Thousand Dollars ($14,000.00) to him in hand paid by the buyer, receipt of which is hereby acknowledged . . .' Craig did not in fact give any consideration for the option nor was it the intent of either of the parties that any consideration would be given."

Plaintiff contends that the option agreement was supported by valuable consideration under North Carolina law. It is true, as plaintiff argues, that, under common law, a seal, which was present on the option agreement, imports consideration, *Cruthis v. Steele*, 259 N.C. 701, 131 S.E. 2d 344 (1963). However, where equitable relief is sought, the court will go back of the seal and will refuse to act unless the seal is supported by consideration. *Id.* The question presented, therefore, is whether there was actual consideration.

The agreement between plaintiff and defendants Kessing reads in pertinent part:

> "That the Seller, for and in consideration of the sum of Fourteen Thousand Dollars ($14,000) to him in hand paid by the Buyer, receipt of which is hereby acknowledged, does hereby give and grant unto the Buyer, his heirs, assigns, or representatives, the exclusive option and right to purchase all that certain plot, piece, or parcel of land and all improvements thereon located in the City of Chapel Hill . . . ."

[4] It is undisputed that plaintiff never paid the Kessings any money for the disputed option. Plaintiff's argument, though, is that his extensive efforts to obtain a buyer for the property constituted valuable consideration. There is, indeed, sufficient evidence in this record, from plaintiff's evidence as well as defendant Kessing's, to support the position that plaintiff's extensive efforts to obtain a buyer for the land constituted valuable consideration. For example, defendant Kessing testified on direct examination:

> "As a result of my negotiations with Mr. Craig, Mr. Craig asked me to sign the document identified as Plaintiff's Exhibit 4. It is an Option to Purchase. I told Craig I needed

some money and I needed to do what I could to get it, and I had my interest in the property which was about the only unencumbered thing I had at that point. I asked him if he could do anything with some of his money contacts, and he said possibly he could and he mentioned a person—I thought he said lived in Sanford or somewhere. A woman that lived in Sanford that possibly could put up some money, however, she would have to have some kind of document. Something to show her that there was something to back this up and possibly he would have to cut her in on the situation. I would have to relinquish my part of the property in order for him to be able to show her there was something concrete she was getting for her money."

Furthermore, on cross-examination he stated:

"When Mr. Craig and I met together, I testified that my need was for immediate cash. Mr. Craig agreed that he would make his best efforts to go out and find some cash through a buyer or someone who would invest in the property."

This Court in the case of *Mezzanotte v. Freeland*, 20 N.C. App. 11, 200 S.E. 2d 410 (1973), *cert. denied*, 284 N.C. 616, 201 S.E. 2d 689 (1974), held valid a contract for the sale of land which was "contingent upon . . . [plaintiffs'] being able to secure a second mortgage . . . on such terms and conditions as are satisfactory to [plaintiffs] . . . ." *Id.* at 13, 200 S.E. 2d at 412. The Court noted that the contract implied that plaintiffs would in good faith seek proper financing from North Carolina National Bank, and that plaintiffs could not, on personal whim, reject financing which was in keeping with reasonable business standards. In the case *sub judice* plaintiff was clearly obligated, in good faith, to seek a buyer for the property, and the trial court was in error in its holding that plaintiff did not give any consideration for the option.

### III.

Plaintiff also argues that the trial court erred in concluding:

"3. In addition to the lack of consideration and the failure to comply with the statute of frauds, the court con-

cludes that plaintiff's prayer for specific performance cannot be granted for the following reasons:

"(a) The instrument was not completed at the time of execution by Jonas Kessing.

"(b) Kessing's forgery of his wife's signature on the disputed option agreement.

"(c) The uncompleted 'other conditions' in the disputed option agreement.

"(d) The unfairness of the purchase price as revealed by the gross disparity between the purchase price stated in the option agreement and the sales contract which Craig obtained on the very next day.

"(e) Kessing was operating under extreme economic duress at the time of execution of the disputed option agreement."

None of the above conclusions is supported by sufficient findings of fact, or by the evidence contained in the record.

[5] Conclusion (a), presumably, was prompted by the testimony of defendant Kessing that he was "sure that parts of this document were not filled in at the time I signed it. I can't be too specific except for recalling, the first thing is the 31 July, 1968. This sticks in my craw. That's a month after I had to have the money." However, a review of the written contract indicates that it represents at least a partial integration of the agreement. "[I]t is presumed the writing was intended by the parties to represent all their engagements as to the elements dealt with in the writing." *Neal v. Marrone*, 239 N.C. 73, 77, 79 S.E. 2d 239, 242 (1953). *See also* 2 Stansbury § 253 (Brandis Rev. 1973). Parol evidence, therefore, was incompetent and will not support the trial court's conclusion that the instrument was not completed when executed.

[6] Since we have previously discussed conclusion (b), we now consider conclusion (c). At the end of the form of the disputed option agreement is contained the section "OTHER CONDITIONS." The notation "1.T" appears at this point on the form. There is absent from this record any allegation or showing of fraud. Specific per-

formance will not be denied on the basis of this unexplained notation appearing on the instrument.

[7] Nor can conclusions (d) and (e) be sustained based on the evidence presented. Certainly the conclusion that the purchase price was unfair cannot be based, as apparently it was, on the finding that plaintiff was profiting from his efforts. Moreover, our courts normally do not consider the question of adequacy of the consideration. Furthermore, there is no showing of economic duress, and no findings to support such a conclusion. (*See: Bakeries v. Insurance Co.*, 245 N.C. 408, 96 S.E. 2d 408 (1957); *also see, United States v. Bethlehem Steel Corp.*, 315 U.S. 289, 86 L.Ed. 855, 62 S.Ct. 581 (1942), for a discussion of economic duress.)

IV.

Finally, plaintiff argues that the trial court erred in denying specific performance of the option agreement. He urges this Court to reverse judgment, direct specific performance of the option agreement and nullify the deeds and instruments of all defendants subsequent to the option. In brief, for reasons hereafter appearing, plaintiff is entitled to specific performance.

The record discloses, as the trial court found as fact, that, prior to the option agreement with plaintiff, defendants Kessing conveyed their interest by warranty deed to defendant Blackwell. According to the evidence, that warranty deed was recorded. If this were the extent of the transaction between the Kessings and Blackwell, the denial of specific performance would have been proper since, at the time of plaintiff's option, defendant Kessing would have had no interest for which to grant an option.

There was, however, more to the transaction. As stated elsewhere, defendant Blackwell, on the same day he received the warranty deed from Kessing for $5,000, granted Kessing an option to repurchase for $5,200. Plaintiff argues that the total transaction rendered the warranty deed a security instrument and that defendant Kessing still owned the land at the time of plaintiff's option. There is strong evidence in the record to support this argument. Plaintff himself testified that prior to his option agreement with Kessing, he checked the record and found that the warranty deed from Kessing to Blackwell had been recorded. Plaintiff testified:

". . . Jonas was a little bit surprised that it was recorded. He said it was only a stopgap measure—it was only a loan. And he pointed out the fact that it was nowhere near the value that he had put into it or the value of the land so I felt a little bit better then. Plaintiff's Exhibit 2 is a Deed from Jonas and Alice Kessing to Gordon Blackwell purporting to convey Kessing's half interest in the property which we had previously jointly owned. He said it was for purposes of securing a loan.

&ast;    &ast;    &ast;

"The paper writing marked as Plaintiff's Exhibit 3 is the instrument that Jonas showed me to prove that it was a loan and that it was not intended to be a conveyance outright. This was an Option dated the same date as the previous instrument, 31 May, and recorded."

Furthermore, Kessing stated in a deposition that:

"The deed which my wife and I gave to Gordon Blackwell, dated May 31, 1968, was for purposes of security for a $5,000.00 loan which Mr. Blackwell made to us. The Deed was used as a security instrument. There was no intent on our part at that time to sell our property for the purchase price paid for the Deed. Our interest in the property was worth considerably more than the amount of money paid to us by Mr. Blackwell as a loan. The amount of the loan was $5,000.00. There was no intent at that time to convey a fee simple title."

Finally, during oral argument for this case, defense counsel conceded that the 31 May 1968 transaction "had all the indicia" of a security instrument.

On the other hand, all of the defendants denied plaintiff's allegation that the warranty deed was a security instrument. Kessing testified on direct examination that by executing the warranty deed he intended to sell Blackwell his interest in the property.

Whether a deed and contemporaneous agreement giving the grantor option to re-purchase together constitute a security instrument depends upon the intent of the parties. *Hardy v. Neville*, 261 N.C. 454, 135 S.E. 2d 48 (1964). In the case at bar, the

trial court concluded as a matter of law that the 31 May 1968 warranty deed was a valid instrument conveying all of the Kessings' interest in the 63.54 acres to Blackwell. However, it appears from the record that the trial court never made findings of fact to support this conclusion. No findings were made with regard to the parties' intent or with regard to other factors which are material to the question of whether the deed was in substance a deed or a security instrument. See *Hardy v. Neville, supra,* for other factors to be considered in such a determination.

[8] Despite the fact that the trial court should have made more detailed findings of fact with regard to the 31 May 1968 transaction between the Kessings and Blackwell, a proper determination of whether that transaction constituted a security transaction is not necessary to reach a decision in this case. Since we have found the option between plaintiff and defendant Kessing to be valid, Kessing, at the time plaintiff tendered $14,000, was bound by the terms of the option agreement, *i.e.,* to use $5,200 of the $14,000 to exercise his 31 May 1968 option to re-purchase from Blackwell. On both the 8th and 10th of July 1968, plaintiff tendered the $14,000 to defendants. It was on 11 July 1968 that defendant Kessing assigned his option to re-purchase to Blackwell. (According to Kessing's testimony he made this assignment based upon the advice of both Blackwell and Carlisle who "were in business together; one is the same as the other, it didn't make any difference.")

Where a party contracts to convey his right, title and interest to land he is only required to convey such title as he might have, not necessarily good title. *Talman v. Dixon,* 253 N.C. 193, 116 S.E. 2d 338 (1960). In the case at bar, Kessing, by the very terms of the option agreement with plaintiff, conveyed to plaintiff his right to re-purchase from Blackwell. The record is undisputed and replete with evidence that all of defendants had actual knowledge of the option given by Kessing to plaintiff. Where it appears that a third party purchaser has actual notice of an optionee's adverse claim, specific performance will not be denied the optionee. *Lawing v. Jaynes* and *Lawing v. McLean,* 285 N.C. 418, 206 S.E. 2d 162 (1974). Plaintiff is therefore entitled to specific performance in accordance with the terms of the 26 June 1968 option.

## V.

[9] Defendant Carlisle makes two cross-assignments of error, only one of which, involving Kessing's deposition, merits the attention of this Court. Defendant Carlisle argues that the trial judge erred in admitting into evidence the deposition of Jonas Kessing taken at a time when Carlisle was not a party to the lawsuit and was not present or represented by counsel, and when defendant Blackwell was a party to the lawsuit but was not present or represented by counsel. We do not agree. G.S. 1A-1, Rule 26(d), which was applicable at the time of the trial of this case, states:

> "Any part or all of a deposition, so far as admissible under the rules of evidence, may be used at the trial or upon the hearing of a motion or an interlocutory proceeding or upon a hearing before a referee, against any party who was present or represented at the taking of the deposition or who had due notice thereof, as follows: . . . ."

While the deposition of Kessing, taken in the absence of Carlisle or counsel for Carlisle, would not be admissible against Carlisle, it is clearly admissible against Kessing. In a trial before a jury, limiting instructions would be necessary. They, of course, are not necessary where, as here, a judge is the factfinder.

Judgment is reversed. Upon remand to the Superior Court of Orange County an order is to be entered directing specific performance of the 26 June 1968 option contract.

Reversed and remanded.

Judge MORRIS concurs.

Judge MARTIN concurs in the result.