MICHAEL W. McLAMB, AND WIFE DEBORAH McLAMB; BARRY SUTTON; G. KEITH HANDY AND WIFE DONNA W. HANDY; MICHAEL McKAY, AND WIFE JILL McKAY; AND STEVE OWEN, PLAINTIFFS v. T.P. INC., DEFENDANT

No. COA04-1472

(Filed 4 October 2005)

1. **Vendor and Purchaser— reservation agreements for coastal property—not an option contract**

Reservation agreements for coastal property which did not require defendants to develop the property or to convey the lots to plaintiffs did not involve an offer to sell held open for a particular time and were not option contracts. The trial correctly granted a Rule 12(b)(6) motion to dismiss a claim for breach of those agreements.

2. **Vendor and Purchaser— reservation agreements for coastal real property—refundable deposits—no consideration**

Plaintiffs could not allege consideration in reservation agreements and deposits on coastal real estate where each deposit was fully refundable on request and had to be used, if at all, as payment toward the land.

3. **Unfair Trade Practices— real estate reservation agreement—alleged loss of contract rights—invalid contract**

The trial court did not err by dismissing an unfair and deceptive trade practices claim concerning a reservation agreement and deposit on coastal land. The practices alleged to be unfair involved the loss of contract rights under the reservations, but it was decided elsewhere in this opinion that these reservations were not contracts.

Appeal by plaintiffs from judgment entered 30 July 2004 by Judge Orlando F. Hudson, Jr., in Wake County Superior Court. Heard in the Court of Appeals 24 August 2005.

*Shipman Gore Mason & Wright, LLP, by Gary K. Shipman and William G. Wright, for plaintiff appellants.*

*Manning Fulton & Skinner, P.A., by William C. Smith, Jr., for defendant appellee.*

McCULLOUGH, Judge.

Plaintiffs appeal from an order dismissing their claims pursuant to N.C. Gen. Stat. § 1A-1, Rule 12(b)(6). We affirm.

Facts

Plaintiffs are a group of individuals who sought to purchase real estate in the Oceanaire Subdivision, which defendant T.P. Inc. contemplated developing in Surf City, North Carolina. At various points in 2002 and 2003, each of the plaintiffs signed a "Reservation Agreement" (hereinafter "reservation(s)") with defendant. With each reservation, one of the plaintiffs purported to reserve the right to purchase one or more lots in Oceanaire Estates. The reservations required a $500 per lot deposit "[a]s consideration" from each plaintiff. Each reservation contained the following clause, which governed the holding and use of the deposits:

Said deposit shall be held by Anchor Real Estate Corp. until the first to occur of the following:

a) [the particular plaintiff] requests cancellation of this Agreement and refund of the deposit[; or]

b) the [parties] enter into an Offer to Purchase and Contract, in which case said deposit shall be credited to [the particular plaintiff] at the time of closing.

Further, some of the reservations contained the following provisions:

c) Seller expects to have infrastructure in place and the plat map recorded by [a specified date].

d) Buyer shall enter into an Offer to Purchase and Contract with Seller within 2 weeks after "c" has been completed with a closing date not to exceed 30 days from the date of the contract.

In addition, some of the reservations contained a provision which made the reservation void if the buyer had not either requested his deposit back or "enter[ed] into an Offer to Purchase and Contract [with seller]" by a specified date. Citing an inability to obtain necessary permits, defendant recanted the reservation agreements and returned plaintiffs' deposits in December 2003.

Plaintiffs thereafter filed a lawsuit against defendant. Plaintiffs' complaint alleged that the reservations constituted binding option contracts, that defendant was in fact able to obtain the necessary per-

mits to develop Oceanaire Estates, and that defendant had claimed that it could not obtain permitting in an attempt to avoid plaintiffs' reservations and make a greater profit on the sale of the land. Plaintiffs sought specific performance of the reservations and damages under the North Carolina Unfair and Deceptive Trade Practices Act, N.C. Gen. Stat. § 75-16, *et seq.* The trial court dismissed plaintiffs' lawsuit for failure to state a claim upon which relief could be granted pursuant to N.C. Gen. Stat. § 1A-1, Rule 12(b)(6). Plaintiffs appeal.

I.

In their first argument on appeal, plaintiffs contend that the trial court erred by dismissing their breach of contract claims. Plaintiffs claim that they pled the existence of an option contract that was breached by defendant. We disagree.

"On a Rule 12(b)(6) motion to dismiss, the question is whether, as a matter of law, the allegations of the complaint, treated as true, state a claim upon which relief can be granted." *Wood v. Guilford Cty.*, 355 N.C. 161, 166, 558 S.E.2d 490, 494 (2002). Dismissal under Rule 12(b)(6) is proper if "(1) the complaint on its face reveals that no law supports the . . . claim; (2) the complaint on its face reveals the absence of facts sufficient to make a good claim; or (3) the complaint discloses some fact that necessarily defeats the . . . claim." *Id.*

"The elements of a claim for breach of contract are (1) existence of a valid contract and (2) breach of the terms of [the] contract." *Poor v. Hill*, 138 N.C. App. 19, 26, 530 S.E.2d 838, 843 (2000). This Court has held that where the complaint alleges each of these elements, it is error to dismiss a breach of contract claim under N.C. Gen. Stat. § 1A-1, Rule 12(b)(6). *Toomer v. Garrett*, 155 N.C. App. 462, 481-82, 574 S.E.2d 76, 91, *appeal dismissed, disc. review denied*, 357 N.C. 66, 579 S.E.2d 576 (2003). The instant case presents questions as to whether plaintiffs alleged the existence of an offer by defendant to sell land and whether any such offer was made irrevocable by consideration given by plaintiffs.

A.　Whether Plaintiffs Alleged An Offer to Sell Land

[1] "A contract is simply a promise supported by consideration, which arises . . . when the terms of an offer are accepted by the party to whom it is extended." 17 C.J.S. *Contracts* § 2 (1999); *see also Copy Products, Inc. v. Randolph*, 62 N.C. App. 553, 555, 303 S.E.2d 87, 88 (1983). " '[A]n "option" [contract] is a contract by which the owner agrees to give another the exclusive right to buy property at a fixed

price within a specified time.' In effect, an owner of property agrees to hold his offer [to sell] open for a specified period of time." *Normile v. Miller*, 313 N.C. 98, 105, 326 S.E.2d 11, 16 (1985) (citations omitted). For there to be a valid option, there must be an express "promise or agreement that [an offer will] remain open for a specified period of time." *Id.*

> For instance, in *Ward v. Albertson*, 165 N.C. 218, 81 S.E. 168 (1914) . . . , defendant-seller had agreed in writing as follows: ". . . I agree that if [prospective purchaser] pays me nine hundred and ninety-five dollars prior to January 1, 1913, to convey to him all the timber and trees . . . ." *Id.* at 219, 81 S.E. at 168. Similarly, in *Thomason v. Bescher*, 176 N.C. 622, 97 S.E. 654 (1918), defendant-seller agreed in writing: ". . . we, J. C. and W. M. Bescher, do hereby contract and agree with said [prospective purchaser] to sell and convey . . . all that certain tract . . . at his or their request on or before the 18th day of August, 1917 . . ." *Id.* at 624, 97 S.E. at 654. And finally, in *Kidd v. Early*, 289 N.C. 343, 222 S.E. 2d 392 (1976), defendant-sellers agreed in writing: ". . . we C. F. Early and Bessie D. Early, hereby irrevocably agree to convey to [prospective purchaser] upon demand by him within 30 days from the date hereof, . . . a certain tract or parcel of land . . . ." *Id.* at 346, 222 S.E. 2d at 396.

*Normile*, 313 N.C. at 105, 326 S.E.2d at 16. Our Supreme Court has held that an option contract does not exist where "[t]here is no language indicating that [seller] in any way agreed to sell or convey her real property to [prospective buyers] at their request within a specified period of time." *Id.* at 106, 326 S.E.2d at 16.

In the instant case, all of the reservations stated that "SELLER is desirous of selling lots in Oceanaire Estates" and "BUYER reserves the right to purchase a lot." Further, some of the reservations contained the following provisions:

> c) Seller expects to have the infrastructure in place and the plat map recorded by [date].

> d) Buyer shall enter into an Offer to Purchase and Contract with Seller within 2 weeks after "c" has been completed with a closing date not to exceed 30 days from the date of the contract.

In addition, some of the reservations contained a provision which made the reservation void if the buyer had not either requested his deposit back or "enter[ed] into an Offer to Purchase and Contract

[with seller]" by a specified date. However, nothing in the reservations actually required defendant to develop the property upon which plaintiffs' lots were to be located or to convey such lots to plaintiffs.

Accordingly, plaintiffs could not allege that the reservations represented an offer to sell that defendant would hold open for a particular period of time. As such, they could not allege the existence of option contracts. Without such contracts, there could be no claims for breach. Therefore, the trial court properly dismissed plaintiffs' breach of contract claims.

### B. Whether Plaintiffs Gave Consideration to Make the Alleged Offer to Sell Irrevocable

[2] Even assuming *arguendo* that plaintiffs could allege that the reservations represented offers by defendant to allow plaintiffs to buy property at a fixed price within a specified time, plaintiffs could not allege that they gave consideration so as to create a binding option contract. To be enforceable, "[an] option contract must . . . be supported by valuable consideration." *Normile*, 313 N.C. at 105, 326 S.E.2d at 16; *see also Ward*, 165 N.C. at 222, 81 S.E. at 169 (holding that the consideration given in exchange for the option must be such that the option agreement " 'constitutes a binding and irrevocable contract to sell if the other party shall elect to purchase within the time specified.' ") (citation omitted). "Consideration which is sufficient to support a contract 'consists of "any benefit, right, or interest bestowed upon the promisor, or any forbearance, detriment, or loss undertaken by the promisee." ' " *Home Elec. Co. v. Hall & Underdown Heating & Air Conditioning Co.*, 86 N.C. App. 540, 542, 358 S.E.2d 539, 540 (1987) (citations omitted), *aff'd*, 322 N.C. 107, 366 S.E.2d 441 (1988).

The present plaintiffs contend that the $500 deposits supplied the necessary consideration for each option, notwithstanding that each plaintiff's deposit was refundable in full at his request and had to be used, if ever, as payment for the land alleged to be under option, because

> Plaintiffs . . . lost the benefit of the use of that money during the interim time period before they decided whether to exercise their options to purchase the subject lots. Defendant received the benefit of the use of this money to enable it to[,] *inter alia*[,] both receive and/or qualify for financing and to earn interest on the same should Defendant so desire.

In support of this view, plaintiffs urge us to adopt the reasoning of Florida appellate courts which have held that even a deposit which is refundable at the behest of a person giving the deposit is sufficient consideration. *See Benson v. Chalfonte Dev. Corp.*, 348 So. 2d 557, 559-60 (Fla. Dist. Ct. App. 1976) ("Although, under the terms of the option, appellants were to receive any accumulated interest if their deposits were returned, a jury might find that appellants suffered some detriment and inconvenience in that they were deprived of the free and unrestricted use of their money during the period it was on deposit."), *disc. review denied*, 354 So. 2d 979 (Fla. 1977); *King v. Hall*, 306 So. 2d 171, 173 (Fla. Dist. Ct. App. 1975) ("While buyer's . . . deposit could have been [with]drawn . . . , it did constitute sufficient consideration . . . as it was a detriment or inconvenience to buyer to post it. It was done to show good faith and buyer was deprived of the use of the money during the period it was posted. It does not matter that the burden to the buyer was small or that the benefit to sellers was small.").

We are not inclined to adopt the approach suggested by plaintiffs. Though no North Carolina appellate court has directly addressed whether deposits, such as the ones made by the present plaintiffs, are sufficient consideration, our courts have held that consideration which may be withdrawn on a whim is illusory consideration which is insufficient to support a contract. *See, e.g., Kadis v. Britt*, 224 N.C. 154, 163, 29 S.E.2d 543, 548 (1944) ("A consideration cannot be constituted out of something that is given and taken in the same breath—of an employment which need not last longer than the ink is dry upon the signature of the employee [to a covenant not to compete] . . . ."); *Wilmar, Inc. v. Liles*, 13 N.C. App. 71, 78-79, 185 S.E.2d 278, 283 (1971) (holding that a profit sharing plan was illusory consideration in return for a covenant not to compete where, *inter alia*, it was drawn up by the employer, was subject to amendment by the employer, and was amended by employer to reduce, and for a period of two years eliminate, contributions to the plan), *cert. denied*, 280 N.C. 305, 186 S.E.2d 178 (1972). Further, a number of authorities that have considered the issue now before us have adopted a view which is contrary to the one proffered by the present plaintiffs. *See Ford v. McGregor*, 234 S.W.2d 493, 495 (Ky. 1950) ("We think it is clear that there was no monetary consideration to support the option contract here involved. There was no money paid for the option itself. [A] $650 check [drawn by one of the parties] was simply an advance payment on the purchase price if the deal went through but, if not, to be refunded."); *First Dev. Corp. v. Martin Marietta Corp.*, 959 F.2d 617,

622 (6th Cir. 1992) ("[A]n 'option' without consideration can be withdrawn at any time before acceptance and . . . a refundable deposit which is simply an advance payment on the purchase price, if the sale of the real estate is ultimately consummated, does not constitute consideration for an irrevocable option."); *Country Club Oil Co. v. Lee*, 58 N.W.2d 247, 250 (Minn. 1953) ("Where the only consideration for the option is the obligation of the optionee to pay the stipulated purchase price of the property in case he elects to exercise the option and purchase the property, that is not a sufficient legal consideration for the option since the consideration for the option must be separate and distinct from the obligation of the optionee to pay the stipulated purchase price in case he elects to purchase the property.")[1]; *Aspinwall v. Ryan*, 226 P.2d 814, 817 (Or. 1951) ("The $100.00 payment was not intended as consideration for the option. It was simply an advance payment on the purchase price. To constitute a valid option, there must be a valuable consideration therefor apart from the consideration for the sale. If there is none, the option is in effect a mere offer, and may be withdrawn at any time before acceptance."); 3-11 Corbin on Contracts § 11.7 n. 11 (1999) ("If no down payment were made and [an] option holder merely promised to pay . . . in the event the holder exercised the option, there would have been no sufficient consideration and the so-called 'option' would have been a revocable offer only."). Consistent with the general rules concerning what constitutes valid consideration under North Carolina contract law and with the result reached in other jurisdictions, we hold that an option is not supported by sufficient consideration if it is purported to be held open only by a deposit which is (1) refundable at the behest of the depositing party, and (2) to be applied as payment towards the object for which the option is offered if a sale occurs.

In the instant case, it is not disputed that each deposit was freely refundable at the request of the depositing plaintiff and that the deposit would be used, if ever, as payment towards the purchase price of the land that was alleged to be reserved by the option contract. Given these facts and circumstances, plaintiffs cannot show consideration for the alleged option contracts.

Accordingly, no valid option contracts existed pursuant to which the plaintiffs could allege breach by defendant. Therefore, the trial

---

1. The holding in *Country Club Oil Co.*, 58 N.W.2d at 249-50, was that $100 paid for a ninety-day option to purchase land for $3,000 could constitute consideration even though it was to be applied to the purchase price if the option was exercised because "in the event of the failure of the plaintiff to exercise the option the $100 was to be forfeited . . . ."

court properly dismissed plaintiffs' breach of contract claims pursuant to N.C. Gen. Stat. § 1A-1, Rule 12(b)(6). This assignment of error is overruled.

## II.

[3] In their second argument on appeal, plaintiffs contend that the trial court erred by dismissing their unfair and deceptive trade practices claims. We disagree.

The elements of a claim for unfair and deceptive trade practices in violation of N.C. Gen. Stat. § 75-1.1 are: "(1) an unfair or deceptive act or practice, or an unfair method of competition, (2) in or affecting commerce, (3) which proximately caused actual injury to the plaintiff or to his business." *Spartan Leasing v. Pollard*, 101 N.C. App. 450, 460-61, 400 S.E.2d 476, 482 (1991). Thus, "[r]ecovery according to [N.C. Gen. Stat. § 75-1.1 and 75-16] is limited to those situations when a plaintiff can show that plaintiff detrimentally relied upon a statement or misrepresentation and he or she 'suffered actual injury as a proximate result of defendant's deceptive statement or misrepresentation.' " *Forbes v. Par Ten Group, Inc.*, 99 N.C. App. 587, 601, 394 S.E.2d 643, 651 (1990) (citation omitted), *disc. review denied*, 328 N.C. 89, 402 S.E.2d 824 (1991).

In the instant case, plaintiffs alleged that defendant intentionally failed to honor the reservations because the property plaintiffs sought to buy had become more valuable and dishonestly represented that the reservations could not be honored because necessary permits could not be obtained. Plaintiffs further alleged that they suffered resulting damages because they lost the benefit of their bargains, the free and unrestricted use of their deposit money, and the opportunity to use their money elsewhere.

Significantly, plaintiffs did not allege that defendant intended to deceive them from the outset. As such, there was no allegation that an unfair or deceptive act by defendant induced plaintiffs either to pay the deposits mentioned in the reservations or to leave the deposits with defendant's agent rather than withdrawing them. Indeed, the unfair and deceptive acts averred in plaintiffs' complaint involved defendant's return of the deposits and failure to honor the reservations. Therefore, the damage to plaintiffs, if any, was the loss of their contract rights under the reservations. However, because plaintiffs did not have any contract rights under the reservations, they could not allege any damage by virtue of defendant's alleged unfair and deceptive acts.

**HILLIARD v. N.C. DEP'T OF CORR.**

[173 N.C. App. 594 (2005)]

Accordingly, the trial court properly dismissed plaintiffs' unfair and deceptive trade practices claims pursuant to N.C. Gen. Stat. § 1A-1, Rule 12(b)(6). This assignment of error is overruled.

For the foregoing reasons, the trial court's order of dismissal is

Affirmed.

Judges TYSON and BRYANT concur.