DAVIS, Judge.
 

 *685
 
 This case requires us to consider whether a promissory note is unenforceable where a failure to abide by the statute of frauds invalidated the consideration intended to support the note. Defendants Helmi L. Felfel and Laura C. Felfel (the "Felfels") appeal from the trial court's order denying their motion for judgment notwithstanding the verdict following a jury verdict finding that the Felfels breached their obligations under the note. Because we conclude that the promissory note was unenforceable for lack of consideration, we reverse.
 

 *251
 

 Factual and Procedural Background
 

 In 2007, the Felfels were living in their home on Bay Harbour Road in Mooresville, North Carolina (the "Bay Harbour Property"). At the time, Plaintiff Jason Kyle owned a home on Jetton Road in Cornelius, North Carolina (the "Jetton Property"). At some point during that year, the Felfels and Kyle were introduced to each other through a mutual friend. The Felfels and Kyle ultimately engaged in discussions about a possible "house swap." The Felfels wanted to sell the Bay Harbour Property and move to the Jetton Property so that Mr. Felfel could live closer to his place of employment. Kyle wished to sell the Jetton Property and live elsewhere.
 

 They decided to structure a transaction whereby the Felfels would rent the Jetton Property for five years and Kyle would rent the Bay Harbour Property. As part of this agreement, the Felfels were to give Kyle a promissory note in the amount of $200,000 that was intended to serve as partial consideration for their receipt of an option to purchase the Jetton Property at the end of the lease period.
 

 Based upon the parties' agreement, the Felfels moved into the Jetton Property in 2008. In 2010, the parties sought to memorialize their agreement through the execution of two written instruments: (1) a document
 
 *686
 
 titled "Amended and Restated Lease Agreement" (hereinafter the "2010 Lease Document"); and (2) a promissory note dated 1 February 2010 (hereinafter the "Note") executed by the Felfels in Kyle's favor.
 

 The 2010 Lease Document provided the terms of the Felfels' rental of the Jetton Property and contained a provision stating that the lease would run from 1 January 2010 until 30 November 2014. The 2010 Lease Document also contained the following language in paragraph 21 purporting to grant an option (hereinafter the "2010 Option") giving the Felfels the right to purchase the Jetton Property during the lease period:
 

 21. OPTION TO PURCHASE. [The Felfels] shall have an Option ... to purchase the [Jetton Property] during the term of this lease including any extensions or renewals hereof. If [the Felfels] fail[ ] to exercise this option in the manner described, then the Option shall automatically cease and be of no further force and effect.
 

 It is undisputed that the 2010 Lease Document was signed by the Felfels on 1 February 2010-the same date that they signed the Note-as evidenced by a copy of the document entered into evidence at trial. However, no copy of the 2010 Lease Document bearing
 
 Kyle's
 
 signature was ever produced during discovery or at trial.
 

 The Note, which was in the amount of $200,000 and carried a nine percent interest rate, was secured by a deed of trust to the Bay Harbour Property. The Note stated that it was "[d]ue and payable upon the earlier of (i) an Event of Default under the Lease by [the Felfels], (ii) the termination of the Lease, or (iii) November 30, 2014." The Note also contained the following provision:
 

 This Note is being given as partial consideration for the undersigned's receipt from Jason Kyle of an option to purchase that certain property located at ... Jetton Road, Cornelius, North Carolina
 
 pursuant to the terms of that certain Amended and Restated Lease Agreement between the parties of even date herewith
 
 [.]
 

 (Emphasis added.) The Note was signed by both of the Felfels on 1 February 2010.
 
 [1]
 

 In 2011, the parties entered into a new instrument-also entitled "Amended and Restated Lease Agreement" (hereinafter the "2011
 
 *687
 
 Lease")-that adjusted the amount of monthly rent the Felfels were to pay Kyle for the Jetton Property and extended the lease term to 31 May 2015. The 2011 Lease also stated, in pertinent part, the following:
 

 [Kyle] previously granted to [the Felfels] an option to purchase the [Jetton Property] under Paragraph 21 of the Original Lease.
 
 Said purchase option is hereby terminated and replaced in full with the following Option
 
 ... hereby granted to [the Felfels] to purchase the [Jetton Property] during the term of this Lease, including any extensions or renewals hereof.
 
 The
 

 *252
 

 Option is being given in consideration of [the Felfels'] agreement to enter into this Lease
 
 . If [the Felfels] fail[ ] to exercise this option in the manner described, then the Option shall automatically cease and be of no further force and effect.
 

 (Emphasis added.)
 

 Thus, the 2011 Lease contained a new option (hereinafter the "2011 Option"). A copy of the 2011 Lease entered into evidence at trial shows that it was signed by the Felfels on 10 January 2011 and by Kyle on 15 February 2011. Thus, unlike the 2010 Lease Document, the 2011 Lease was signed by both Kyle and the Felfels.
 

 After occupying the Jetton Property and making their monthly rental payments during the lease period, the Felfels vacated the Jetton Property when the 2011 Lease term ended on 31 May 2015. At no point did the Felfels ever attempt to exercise their option to purchase the Jetton Property.
 

 Despite Kyle's demand that the Felfels pay the sums due under the Note, they refused to do so. On 26 August 2015, Kyle filed the present lawsuit in Mecklenburg County Superior Court in which he alleged as his sole cause of action that the Felfels had breached the Note when they failed to pay him the $200,000, plus interest, upon his demand for payment. In both their initial answer and their amended answer, the Felfels asserted the defense that the Note was unenforceable for lack of consideration.
 

 A jury trial was held before the Honorable Yvonne M. Evans beginning on 27 June 2016. Both at the close of Kyle's evidence and at the close of all of the evidence, the Felfels moved for a directed verdict. Both motions were denied by the trial court. The jury entered a verdict in Kyle's favor, answering the following questions in the affirmative: (1) "Did Mr. Kyle and the Felfels enter into a contract?"; and (2) "Did the
 
 *688
 
 Felfels breach the contract by failing to pay Mr. Kyle the amount owed?" The jury determined that Kyle was entitled to recover $250,000 in damages from the Felfels. The trial court entered judgment upon the verdict on 1 July 2016.
 

 On 7 July 2016, the Felfels filed a motion for judgment notwithstanding the verdict ("JNOV") in which they asserted, among other grounds, that Kyle had failed to offer any evidence at trial showing that he provided legally sufficient consideration in exchange for the Felfels' execution of the Note. After holding a hearing on 20 July 2016, the trial court entered an order denying the JNOV motion on 26 July 2016. The Felfels filed a timely notice of appeal from that order.
 

 Analysis
 

 The Felfels argue on appeal that the trial court erred in denying their motion for JNOV given that the Note was unenforceable for lack of consideration. This assertion is premised upon their contention that the 2010 Lease Document (which contained the 2010 Option that purported to be the consideration for the Note) violated the statute of frauds because it was not signed by Kyle. The Felfels contend that this failure to comply with the statute of frauds, in turn, means that the 2010 Option was illusory in that it could not have been legally enforced by them against Kyle. Accordingly, the Felfels reason, consideration for the Note was never actually given by Kyle and thus the Note is unenforceable.
 

 Kyle, conversely, asserts that either the 2010 Option or the 2011 Option did, in fact, serve as the necessary consideration for the Note. Alternatively, he argues that the doctrine of quasi-estoppel precludes the Felfels from contesting the validity of the Note.
 

 In order to survive a JNOV motion,
 

 the non-movant must present more than a scintilla of evidence to support its claim. While a scintilla is very slight evidence, the non-movant's evidence must still do more than raise a suspicion, conjecture, guess, surmise, or speculation as to the pertinent facts in order to justify its submission to the jury. The trial court must construe the evidence in the light most favorable to the non-movant and resolve all evidentiary conflicts in the non-movant's favor.
 

 Morris v. Scenera Research, LLC
 
 ,
 
 368 N.C. 857
 
 , 861,
 
 788 S.E.2d 154
 
 , 157-58 (2016) (internal citations and quotation marks omitted). We review the trial court's ruling on a JNOV motion
 
 de novo
 
 .
 

 Id.
 

 *253
 

 *689
 

 I. Lack of Consideration
 

 In order to recover on a promissory note, "the party seeking relief must show execution, delivery, consideration, demand, and nonpayment."
 
 Kane Plaza Assocs. v. Chadwick
 
 ,
 
 126 N.C. App. 661
 
 , 664,
 
 486 S.E.2d 465
 
 , 467 (1997) (citation omitted). At issue here is whether Kyle provided consideration, which "consists of any benefit, right, or interest bestowed upon the promisor, or any forbearance, detriment, or loss undertaken by the promisee."
 
 McLamb v. T.P. Inc
 
 .,
 
 173 N.C. App. 586
 
 , 590,
 
 619 S.E.2d 577
 
 , 581 (2005) (citation and quotation marks omitted),
 
 disc. review denied
 
 ,
 
 360 N.C. 290
 
 ,
 
 627 S.E.2d 621
 
 (2006).
 

 Kyle asserts that the option to purchase the Jetton Property was the consideration that the Felfels received in exchange for executing the Note.
 
 [2]
 
 Therefore, in order to prove that consideration existed to support the Note, Kyle was required to establish either that (1) the 2010 Option contained in the 2010 Lease Document-which was executed contemporaneously with the Note-was a legally enforceable agreement; or (2) the 2011 Option contained in the 2011 Lease served as retroactive consideration for the Note. We address each issue in turn.
 

 A. 2010 Option as Consideration for the Note
 

 The Felfels contended in the trial court, and maintain in this appeal, that the option contained in the 2010 Lease Document could not serve as the consideration necessary to support the Note because the 2010 Lease Document violated the statute of frauds in that it was not signed by Kyle. North Carolina's statute of frauds states as follows:
 

 All contracts to sell or convey any lands, tenements or hereditaments, or any interest in or concerning them ... and all other leases and contracts for leasing lands exceeding in duration three years from the making thereof, shall be void unless said contract, or some memorandum or note thereof, be put in writing and signed by the party to be charged therewith, or by some other person by him thereto lawfully authorized.
 

 N.C. Gen. Stat. § 22-2
 
 (2015). It is well established that the "statute of frauds ... is applicable to option contracts for the purchase of property[.]"
 
 Craig v. Kessing
 
 ,
 
 36 N.C. App. 389
 
 , 392,
 
 244 S.E.2d 721
 
 , 723 (1978),
 
 aff'd
 
 ,
 
 297 N.C. 32
 
 ,
 
 253 S.E.2d 264
 
 (1979).
 

 *690
 
 With regard to documents required by the statute of frauds to be in writing, the only admissible evidence to establish the agreement-including the fact that it was signed-is the writing itself.
 
 See
 

 Jamerson v. Logan
 
 ,
 
 228 N.C. 540
 
 , 544,
 
 46 S.E.2d 561
 
 , 564 (1948) ("A contract which the law requires to be in writing can be proved only by the writing itself, not as the
 
 best
 
 , but as the
 
 only admissible evidence of its existence
 
 ." (citation and quotation marks omitted)).
 

 Here, it is undisputed that the 2010 Lease Document purported to contain both an agreement for the Felfels to lease the Jetton Property for a period exceeding three years and an option for them to purchase that property. Therefore, the 2010 Lease Document (including the 2010 Option contained therein) was subject to the statute of frauds. Because neither party introduced a version of the 2010 Lease Document that had been signed by Kyle, the statute of frauds would have barred any attempt by the Felfels to enforce the 2010 Option against Kyle. Accordingly, because the 2010 Option was unenforceable against Kyle, it cannot serve as consideration for the Note.
 
 See
 

 McLamb
 
 ,
 
 173 N.C. App. at 591
 
 ,
 
 619 S.E.2d at 581
 
 ("[O]ur courts have held that consideration which may be withdrawn on a whim is illusory consideration which is insufficient to support a contract.");
 
 see also
 

 Milner Airco, Inc. of Charlotte, N.C. v. Morris
 
 ,
 
 111 N.C. App. 866
 
 , 870,
 
 433 S.E.2d 811
 
 , 814 (1993) (holding contract unenforceable for lack of consideration because "while reciting consideration, [the contract] does not bind the employer to any promise").
 

 *254
 

 B. 2011 Lease as Consideration for the Note
 

 Kyle also argues, in the alternative, that even if the 2010 Lease Document-standing alone-did not serve as consideration for the Note, consideration was provided retroactively by the 2011 Lease, which both referenced the 2010 Option and purported to grant the Felfels a new option. We reject this argument for several reasons.
 

 First, the Note clearly stated on its face that the consideration for its execution was the option granted
 
 in the 2010 Lease Document
 
 : "This Note is being given as partial consideration for the [Felfels'] receipt from Jason Kyle of an option to purchase [the Jetton Property] pursuant to the terms of that certain Amended and Restated Lease Agreement between the parties
 
 of even date herewith
 
 [.]" (Emphasis added.) The phrase "even date" means "the same date." Black's Law Dictionary 635 (9th ed. 2009). Thus, it is clear that the option being referenced in the Note was the one contained in the 2010 Lease Document as that was the "Amended and Restated Lease Agreement" signed by the Felfels on the same date as the Note-
 
 not
 
 the 2011 Lease signed a year later. This fact is fatal to Kyle's argument.
 
 See, e.g.,
 

 *691
 

 In re Head Grading
 

 Co., Inc
 
 .,
 
 353 B.R. 122
 
 , 123-24 (Bankr. E.D.N.C. 2006) (applying North Carolina law to invalidate deed of trust secured by "Promissory Note of even date herewith" because promissory note was executed on later date than deed of trust).
 

 Second, we are not persuaded by Kyle's contention that because multiple writings may in some circumstances be construed together to satisfy the statute of frauds, we should hold that in this case "the [2011] Lease, with its internal references to the 2010 Lease [Document] and the Note, is sufficient to comply with the statute of frauds." The cases Kyle cites in support of this argument stand merely for the proposition that an agreement comprising separate, cross-referenced writings does not necessarily violate the statute of frauds simply because the documents are not physically attached.
 
 See, e.g.
 
 ,
 
 Fuller v. Southland Corp
 
 .,
 
 57 N.C. App. 1
 
 , 7,
 
 290 S.E.2d 754
 
 , 758 ("[T]he writings need not be physically connected if they contain internal reference to other writings[,]" and "unconnected writings must contain a reference to the other writings, not merely a reference to the same subject matter." (emphasis omitted)),
 
 disc. review denied
 
 ,
 
 306 N.C. 556
 
 ,
 
 294 S.E.2d 223
 
 (1982) ;
 
 Mezzanotte v. Freeland
 
 ,
 
 20 N.C. App. 11
 
 , 16,
 
 200 S.E.2d 410
 
 , 414 (1973) (explaining that "[t]he papers need not be physically attached if they are connected by internal reference" and holding that document referenced within sales agreement and delivered contemporaneously with that agreement constituted part of the "writing" for purposes of statute of frauds),
 
 disc. review denied
 
 ,
 
 284 N.C. 616
 
 ,
 
 201 S.E.2d 689
 
 (1974).
 

 Here, however, the Note did not cross-reference the 2011 Lease.
 
 [3]
 
 Rather, the Note only cross-referenced the "Amended and Restated Lease Agreement between the parties of even date herewith"-that is, the 2010 Lease Document.
 
 [4]
 
 Accordingly, the Note is unenforceable for lack of consideration.
 

 *692
 

 II. Quasi-Estoppel
 

 Kyle's fallback argument is that the doctrine of quasi-estoppel prohibits the Felfels from denying the validity of the Note.
 

 *255
 
 "Under a quasi-estoppel theory, a party who accepts a transaction or instrument and then accepts benefits under it may be estopped to take a later position inconsistent with the prior acceptance of that same transaction or instrument."
 
 Whitacre P'ship v. Biosignia, Inc
 
 .,
 
 358 N.C. 1
 
 , 18,
 
 591 S.E.2d 870
 
 , 881-82 (2004) (citation and quotation marks omitted). "[T]he essential purpose of quasi-estoppel is to prevent a party from benefitting by taking two clearly inconsistent positions."
 
 Id.
 
 at 18-19,
 
 591 S.E.2d at 882
 
 (citation, quotation marks, and ellipsis omitted). Quasi-estoppel "rests upon principles of equity and is designed to aid the law in the administration of justice when without its intervention injustice would result. Equity serves to moderate the unjust results that would follow from the unbending application of common law rules and statutes."
 
 Brooks v. Hackney
 
 ,
 
 329 N.C. 166
 
 , 173,
 
 404 S.E.2d 854
 
 , 859 (1991) (internal citation and quotation marks omitted).
 

 Because the Felfels accepted benefits in connection with the Note, Kyle asserts, they should be estopped from taking the inconsistent position of denying the Note's validity. However, Kyle did not assert this doctrine at any time prior to the beginning of trial. Rather, his counsel raised the general doctrine of estoppel for the first time while arguing in favor of the denial of the Felfels' motion for a directed verdict at the close of evidence at trial. Kyle's attorney did not specifically refer to
 
 quasi
 
 -estoppel until the JNOV stage of the proceeding.
 
 [5]
 

 In
 
 Parkersmith Properties v. Johnson
 
 ,
 
 136 N.C. App. 626
 
 ,
 
 525 S.E.2d 491
 
 (2000), we stated the following in assessing the timeliness of the plaintiff's attempt to invoke quasi-estoppel:
 

 Defendants argue Plaintiff cannot raise the issue of estoppel on appeal because Plaintiff did not allege a theory of estoppel in its complaint. Plaintiff did, however, assert a theory of estoppel in its motion in opposition to summary judgment. Because estoppel is an affirmative defense and Defendants had notice of the defense prior to the summary judgment hearing, Plaintiff properly raised the theory of estoppel and the issue is, therefore, properly before this Court.
 

 Id.
 

 at 632 n.3,
 
 525 S.E.2d at
 
 495 n.3.
 

 *693
 
 However, Kyle has failed to point us to any legal authority standing for the proposition that quasi-estoppel may be raised as an alternative theory of recovery for the first time after a trial has begun-much less at the directed verdict or JNOV stages. Moreover, there is no valid justification for Kyle's delay in raising this issue given that the Felfels asserted the defense of lack of consideration in their answer. Notably, it was
 
 Kyle's
 
 burden in this lawsuit to prove that the Note was an enforceable agreement. The doctrine of quasi-estoppel constituted a discrete theory of recovery in this case-i.e., that this equitable doctrine allowed enforcement of the Note despite the absence of consideration. Therefore, we deem this theory of recovery to have been waived.
 

 We note that our Supreme Court has held that the closely-related doctrine of equitable estoppel may present a jury question.
 
 See
 

 Creech v. Melnik
 
 ,
 
 347 N.C. 520
 
 , 528,
 
 495 S.E.2d 907
 
 , 913 (1998) ("[W]here the evidence raises a permissible inference that the elements of equitable estoppel are present, but where other inferences may be drawn from contrary evidence, estoppel is a
 
 question of fact for the jury
 
 , upon proper instructions from the trial court." (emphasis added)). Although
 
 Creech
 
 dealt with equitable estoppel rather than quasi-estoppel, the Supreme Court has characterized quasi-estoppel as a "branch of equitable estoppel,"
 
 Whitacre
 
 ,
 
 358 N.C. at 18
 
 ,
 
 591 S.E.2d at 881
 
 , and we see no distinction between the two doctrines for purposes of this issue.
 
 Creech
 
 is, therefore, consistent with the proposition that a party seeking to rely upon a theory of quasi-estoppel must invoke the doctrine in advance of trial.
 

 Moreover, even assuming
 
 arguendo
 
 that Kyle had not waived this issue, quasi-estoppel would not apply under the facts of this case. The 2010 Option (which is the
 
 *256
 
 primary benefit Kyle claims the Felfels received in exchange for executing the Note) was only in effect for approximately one year. It was superseded by the 2011 Option contained in the 2011 Lease. By the express terms of the 2011 Lease, the payment of rent by the Felfels during the lease period served as consideration for the 2011 Option.
 

 We do not believe that the facts of this case are sufficient to invoke the doctrine of quasi-estoppel, which is designed to "prevent a party from benefitting by taking two clearly inconsistent positions."
 
 Id.
 
 at 18-19,
 
 591 S.E.2d at 882
 
 (citation and quotation marks omitted). Kyle has failed to show that the Felfels unfairly benefited from taking inconsistent positions as they never attempted to exercise the 2010 Option (or, for that matter, the 2011 Option). In short, this case simply does not cry out for the need to "moderate ... unjust results that would follow from
 
 *694
 
 the unbending application of common law rules and statutes."
 
 Brooks
 
 ,
 
 329 N.C. at 173
 
 ,
 
 404 S.E.2d at 859
 
 .
 

 Accordingly, because the Note failed for lack of consideration and the doctrine of quasi-estoppel is inapplicable, the Felfels were entitled to JNOV. Therefore, the trial court erred in denying their JNOV motion.
 

 Conclusion
 

 For the reasons stated above, we reverse the trial court's 26 July 2016 order and remand for entry of judgment consistent with this opinion.
 

 REVERSED AND REMANDED.
 

 Judges BRYANT and STROUD concur.
 

 [1]
 

 The Note was not signed by Kyle.
 

 [2]
 

 Indeed, neither Paragraph 21 of the 2010 Lease Document nor the Note itself indicate that anything other than the 2010 Option was to serve as consideration for the Felfels' execution of the Note.
 

 [3]
 

 The lack of such a cross-reference is logical given that the 2011 Lease was not executed until approximately one year after the Note was signed.
 

 [4]
 

 We are also unpersuaded by Kyle's citation to
 
 Millikan v. Simmons
 
 ,
 
 244 N.C. 195
 
 ,
 
 93 S.E.2d 59
 
 (1956). We are not presented with a situation, as occurred in
 
 Millikan
 
 , where an agreement was entered verbally on a certain date, memorialized and signed on a later date, and properly construed as having been in effect on the earlier of the two dates.
 
 See
 

 id.
 

 at 199-200
 
 ,
 
 93 S.E.2d at 62-63
 
 ("It is not necessary ... that a writing be signed at the time a contract is made. The writing is not the contract; it is the party's admission that the contract was made. It is sufficient if subsequent to the contract a memorandum thereof is reduced to writing and signed by the party to be charged. The extension agreement, if made on the 13th and reduced to writing and signed on the 15th, would be enforceable between the parties as of the 13th." (internal citation and quotation marks omitted)). Here, the 2011 Lease was
 
 not
 
 simply the memorialization of an earlier verbal agreement; rather, it was a
 
 separate
 
 agreement made a year after the Note and the 2010 Lease Document were executed.
 

 [5]
 

 We note that the applicability of the quasi-estoppel doctrine was never expressly ruled upon by the trial court.