MICHAEL M. NORMILE AND WAWIE KURNIAWAN v. HAZEL ELIZABETH MILLER

LAWRENCE J. SEGAL v. HAZEL ELIZABETH MILLER

No. 8226SC999

(Filed 6 September 1983)

**Contracts § 27— two offers to purchase property—counteroffer of one offer not considered option**

Where one set of plaintiffs made an offer to purchase defendant's property which contained a provision that the offer must be accepted before 5:00 p.m. on August 5th, where defendant made several changes in the terms of the sale and signed the seller's acceptance portion of the contract for sale, where the sales agent took the counteroffer to the first set of plaintiffs and the plaintiffs indicated that they would be unable to agree to certain portions of the counteroffer, and where the second plaintiff signed an offer which defendant accepted and which the agent took to the first set of plaintiffs indicating that defendant had revoked the counteroffer, the trial court properly found that by accepting the second plaintiff's offer to convey the property, defendant re-

voked her original offer to the first set of plaintiffs. The fact that the counteroffer provided that the offer would remain open until 5:00 p.m. and was signed under seal did not make the offer irrevocable as an option.

APPEAL by plaintiffs from *Sitton, Judge.* Judgment entered 26 May 1982 in Superior Court, MECKLENBURG County. Heard in the Court of Appeals 23 August 1983.

*Parker Whedon for plaintiff appellants, Normile and Kurniawan.*

*Levine, Goodman & Carr by Miles S. Levine for plaintiff appellee, Lawrence J. Segal.*

BRASWELL, Judge.

In these consolidated cases separate plaintiffs, each a would-be buyer of real property, sued defendant-owner for specific performance of identical written contracts to sell the same parcel of real estate on Oakland Avenue in Charlotte. When summary judgment was granted in favor of plaintiff Segal and when plaintiffs Normile and Kurniawan's similar motion was denied, Normile and Kurniawan appealed.

The central issue is whether a counteroffer by defendant Miller to Normile and Kurniawan constituted a binding and enforceable option contract to sell land, or whether the counteroffer was revoked by Miller's intervening separate sale to Segal. Miller gave notice of revocation by sale to Normile and Kurniawan prior to their purported acceptance of the counteroffer. The contract contained the word "Seal" after Miller's signature to the counteroffer. No actual consideration for the counteroffer was given.

The undisputed ultimate facts show that on 4 August 1980 defendant Miller was owner of the Oakland Avenue real property and that she listed it for sale with a realtor, Gladys Hawkins. Richard Byer, a real estate broker with the firm Gallery of Homes, showed the property on the same date to plaintiffs Normile and Kurniawan.

On 4 August 1980 Normile and Kurniawan made a written offer to purchase, prepared with the help of Byer, on certain terms and conditions. A provision of the offer was: "9. OFFER & CLOSING

Normile v. Miller and Segal v. Miller

DATE: Time is of the essence, therefore this offer must be accepted on or before 5:00 p.m. Aug. 5th, 1980. A signed copy shall be promptly returned to the purchaser." Other provisions of the contract were: "This offer and the acceptance thereof shall constitute the entire agreement . . . . This offer, when accepted is legally binding . . . ."

The offer was promptly delivered to defendant Miller who made several changes in the terms of the sale, such as, the amount of the binder ($100 to $500), the amount of the down payment ($875 to $1,000), and the term of the purchase money financing (25 years to 20 years). Miller initialed the changes and signed paragraph 10, the seller's acceptance portion of the document. No change was made to the "Time is of the essence" portion of the form contract.

We now turn to the crucial conversation and action of the parties when Byer delivered the counteroffer to Normile at about 8:00 p.m., 4 August 1980. Byer testified through his deposition that Normile "said that he couldn't get the $500.00 because he was waiting on a 2nd mortgage on his house to go through and he mentioned something like he had only begun to negotiate or something like that." Also, Normile said to Byer, "he told me he didn't have the $500.00 and then he told me that he didn't want to go 25 years because he wanted lower payments." Byer knew Normile's interpretation of the contract from that meeting was that he "had the thing off the market and that he had first option on it . . . [and that] nobody else could put an offer in on it and buy it while he had this counteroffer, so he was going to wait awhile before he decided what to do with it." Byer left one pink copy of the counteroffer with Normile. When he departed, Byer considered the counteroffer as having been rejected.

Early in the morning on 5 August 1980, Byer went to the home of Larry Segal who signed an offer containing almost the identical terms of Miller's counteroffer to Normile and Kurniawan. Later that day, Byer took the Segal offer to Gladys Hawkins advising her of the latest development in the negotiations with Normile and Kurniawan. Subsequently, Miller signed Segal's offer.

Around 2:00 p.m. the same day, after delivering Segal's offer to Hawkins, Byer informed Normile, in less than eloquent terms,

that Miller had revoked the counteroffer by stating, "you snooze, you lose; the property has been sold." Yet, prior to 5:00 p.m., Normile and Kurniawan initialed Miller's counteroffer and delivered it to the office of the Gallery of Homes along with the required $500.00 binder despite their knowledge that Miller had already sold the property. When Miller refused to convey the property to either party, both prospective buyers filed independent actions seeking specific performance. After the trials were consolidated, each plaintiff made a motion for summary judgment. The trial court denied the motion of Normile and Kurniawan but granted Segal's motion for summary judgment, ordering Miller to specifically perform the contract to convey to Segal.

A motion for summary judgment is an attempt by a party to avoid the necessity of trial by exposing a fatal weakness in the claim or defense of his opponent. *Caldwell v. Deese,* 288 N.C. 375, 218 S.E. 2d 379 (1975). The moving party has the burden of establishing that there is no genuine issue as to any material fact, entitling him to judgment as a matter of law. *Vassey v. Burch,* 301 N.C. 68, 269 S.E. 2d 137 (1980). This motion requires the movant and the opponent to produce a forecast of the evidence he will present at trial. *See* 2 McIntosh, N.C. Practice and Procedure § 1660.5 (2d ed. Phillips' Supp. 1970). The court may consider evidence consisting of admissions in the pleadings, depositions, answers to interrogatories, affidavits, admissions on file, testimony, and documentary materials. *Koontz v. City of Winston-Salem,* 280 N.C. 513, 186 S.E. 2d 897 (1972). When there is no genuine issue as to any material fact, and when the law applicable to those facts show that a particular party is entitled to relief, the trial court should give judgment accordingly. *Ballinger v. Secretary of Revenue,* 59 N.C. App. 508, 296 S.E. 2d 836 (1982).

To determine which party is entitled to judgment as a matter of law in this case depends on whether an enforceable option contract was formed between Normile and Kurniawan and the property-owner Miller. "An option contract is a promise which meets the requirements for the formation of a contract and limits the promisor's power to revoke an offer." Restatement (Second) of Contracts § 25 (1981). If no enforceable option was created, then the summary judgment granted in favor of Segal and against Normile and Kurniawan was proper.

The facts indicate that the first attempt to establish a contractual relationship between the parties was made by Normile and Kurniawan through their offer to purchase Miller's property. To constitute an acceptance, the offer "must be accepted in its exact terms." *Dobbs v. Trust Co.*, 205 N.C. 153, 156, 170 S.E. 652, 653 (1933). By making substantial changes in the offer submitted by Normile and Kurniawan, Miller did not accept their offer but made a counteroffer, substituting a different bargain than that proposed by the original offer. *See* Restatement (Second) of Contracts § 39 (1981). The counteroffer provided that the offer would remain open until 5:00 p.m. on 5 August 1980 and was signed under seal by Miller. Normile and Kurniawan contend that as a result of this language within the contract a binding option was formed, making the offer irrevocable and precluding Miller from selling the property to Segal before the expiration of the stated period. *See Kidd v. Early*, 289 N.C. 343, 222 S.E. 2d 392 (1976). In order to enforce the option, it must have been based on valid consideration. At common law a seal "imports a consideration or takes the place thereof." 17 C.J.S. *Contracts* § 72 (1963). *See Honey Properties, Inc. v. Gastonia*, 252 N.C. 567, 114 S.E. 2d 344 (1960).

The significance of the seal at the present time varies with each jurisdiction. Restatement (Second) of Contracts § 94, Topic 3, pp. 255-60 (1981). In North Carolina by judicial decision, the seal as it effects consideration has lost much of its importance. In actions seeking equitable relief, it has always been permissible for the court to look behind the seal and refuse to act unless the seal is supported by actual consideration. *Cruthis v. Steele*, 259 N.C. 701, 131 S.E. 2d 344 (1963); *Britton v. Gabriel*, 2 N.C. App. 213, 162 S.E. 2d 686 (1968); *Atkinson v. Wilkerson*, 10 N.C. App. 643, 179 S.E. 2d 872 (1971). Even in actions traditionally at law, the effect of the seal is not to preclude the court from dealing with the issue of consideration entirely, but the seal merely raises a presumption of consideration which must be rebutted by clear and convincing evidence. *Loman-Garrett Supply Company, Inc. v. Dudney*, 56 N.C. App. 622, 289 S.E. 2d 600 (1982).

In *Craig v. Kessing*, 36 N.C. App. 389, 244 S.E. 2d 721 (1978), *aff'd*, 297 N.C. 32, 253 S.E. 2d 264 (1979), this court faced a similar situation. The plaintiff was seeking specific performance of an option contract which was signed under seal, but appeared to be

supported by no other consideration. The court stated that in cases where equitable relief was sought, the court will go back of the seal and will refuse to act unless actual consideration has been given. Id. at 394, 244 S.E. 2d at 724. The court ordered specific performance of the option contract, holding that the plaintiff's extensive efforts to obtain a buyer for the property constituted valuable consideration.

Looking behind the seal in the present case, the record is devoid of any evidence that any consideration was given which would have made the offer irrevocable as an option. Since the promise to hold the offer open until 5:00 p.m., 5 August 1980, was not supported by consideration, it could be revoked at any time. "An offeree's power of acceptance is terminated when the offeror takes definite action inconsistent with an intention to enter into the proposed contract and the offeree acquires reliable information to that effect." Restatement (Second) of Contracts § 43 (1981). By accepting Segal's offer to convey the property, Miller revoked her offer to Normile and Kurniawan. Once they received notice from Byer that the property had been sold, the revocation became effective and their power to accept Miller's counteroffer was terminated. Thus, their subsequent signing of the counteroffer and its delivery to the realtor's office was an insufficient attempt to bind Miller to the contract. We hold that since only Segal entered into a binding contract to purchase from Miller, the trial court properly granted his motion for summary judgment and properly denied the motion made by Normile and Kurniawan.

Affirmed.

Judges ARNOLD and WEBB concur.