Hilco Transp., Inc. v. Atkins, 2016 NCBC 6.

STATE OF NORTH CAROLINA

COUNTY OF GUILFORD

IN THE GENERAL COURT OF JUSTICE
SUPERIOR COURT DIVISION
14 CVS 8677

HILCO TRANSPORT, INC.,

        Plaintiff,

        v.

NATALIE L. ATKINS; MICHAEL
ALLAN BREWER, as Custodian for
Patterson Riley Brewer under the
North Carolina Uniform Transfers to
Minors Act; and MICHAEL ALLAN
BREWER, as Custodian for Nicholas
Alan Brewer under the North Carolina
Uniform Transfers to Minors Act,

        Defendants and
        Third-Party Plaintiffs,

        v.

JOHN GURNEY LONG;
JONATHAN DREW LONG;
RICHARD WOHLFORD; LONG
INVESTMENT PROPERTIES, LLC;
CAROLINA TRANSPORT OF
GREENSBORO, INC.; and ASHLEY
LONG MICHAELS,

        Third-Party Defendants,

and

HILCO TRANSPORT, INC.,

        Nominal Defendant.

)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)

ORDER & OPINION

{1}    THIS MATTER is before the Court on Third-Party Defendants' Motion to Dismiss ("Third-Party Defendants' Motion") and on Defendant Atkins's Motion

for Judgment on the Pleadings ("Atkins's Motion"), brought under Rule 12(b)(6) and Rule 12(c) of the North Carolina Rules of Civil Procedure ("Rule(s)"). For the reasons discussed below, both Motions are DENIED. The Court further holds that Defendants lack standing to pursue derivative claims.

> *Carruthers & Roth, P.A. by J. Patrick Haywood and Mark K. York for Plaintiff and Third-Party Defendants.*

> *Law Offices of Charles Winfree by Charles H. Winfree and Ryan Q. Gladden for Defendants and Third-Party Plaintiffs.*

Gale, Chief Judge.

## I.     INTRODUCTION

{2}     This lawsuit arises from Plaintiff Hilco Transport, Inc.'s ("Hilco") demand to allow Hilco to redeem all shares of its stock owned by Defendants Natalie L. Atkins ("Atkins") and Michael Allan Brewer ("Michael Brewer")[1] pursuant to the buy–sell agreement ("Stockholder Agreement") between Hilco and several of its shareholders. In response, Defendants challenge Hilco's redemption rights under the Stockholder Agreement and allege multiple claims against certain Hilco directors, Hilco shareholders, and third-party companies.

## II.     PROCEDURAL BACKGROUND

{3}     Hilco filed its Complaint on August 29, 2014. The case was designated as a complex business matter on September 5, 2014, and assigned to this Court on September 9, 2014.

{4}     Defendants filed their Answer, Third-Party Complaint, and a Rule 12(b)(6) motion to dismiss on November 3, 2014. After briefing and argument, the Court denied Defendants' motion to dismiss, holding that Hilco was not foreclosed from demanding specific performance under the Stockholder Agreement. *See Hilco*

---

[1] Michael Brewer is the custodian for his two minor children under the North Carolina Uniform Transfers to Minors Act, N.C. Gen. Stat. §§ 33A-1 to -24 (2015). Michael Brewer was not an original signatory to the Stockholder Agreement but subsequently agreed to be bound by the agreement in his capacity as custodian for his children.

*Transp., Inc. v. Atkins*, 2015 NCBC LEXIS 47, at *11–12 (N.C. Super. Ct. May 5, 2015).

{5} Defendants' Third-Party Complaint brings claims against John Gurney Long ("Gurney Long"), Jonathan Drew Long ("Jonathan Long"), Richard Wohlford ("Wohlford"), Long Investment Properties, LLC ("Long Investment"), Carolina Transport of Greensboro, Inc. ("Carolina Transport"), and Ashley Long Michaels ("Michaels"). The Third-Party Complaint includes claims for (1) breach of fiduciary duty against Gurney Long, Jonathan Long, and Wohlford; (2) constructive fraud against Gurney Long and Jonathan Long; (3) unfair and deceptive trade practices under N.C. Gen. Stat. § 75-1.1 (2015) against Gurney Long, Jonathan Long, and Carolina Transport; and (4) unjust enrichment against all Third-Party Defendants.[2]

{6} In the present Motions, Third-Party Defendants move to dismiss Atkins's section 75-1.1 and unjust-enrichment claims under Rule 12(b)(6), and Atkins moves for judgment on the pleadings under Rule 12(c) on Hilco's right to specific performance of the Stockholder Agreement.

{7} The Motions have been fully briefed and argued and are ripe for disposition.

## II. FACTUAL BACKGROUND

### A. The Parties

{8} Hilco is a closely held North Carolina corporation that provides transportation services, including waste, petroleum, propane, asphalt, dump, and aggregate hauling. William H. Long ("Doc Long") and his daughter, Patty Long Hill ("Hill"), formed Hilco in 1987.

{9} In 1988, Hilco merged with Long Brothers of Summerfield, Inc., a North Carolina corporation owned by Doc Long's two sons, Gurney Long and Charles L. Long ("Charles Long"), with Hilco as the surviving corporation.

---

[2] Third-Party Plaintiffs voluntarily dismissed their unjust-enrichment claim against Wohlford on February 19, 2015.

{10}   Gurney Long obtained majority control of Hilco through the purchase of an interest formerly owned by his brother, Charles Long, following Charles Long's death.  At all times relevant to this action, Gurney Long has been a Hilco director and officer.  Since his brother's death, Gurney Long has owned or controlled the majority of Hilco stock.

{11}   Jonathan Long is Gurney Long's son who, at all times relevant to this action, has held stock in Hilco.  In September 2014, he became an officer of Hilco.

{12}   Michaels is Gurney Long's daughter and a Hilco stockholder.

{13}   Long Investment is a North Carolina limited liability company in which Gurney and Jonathan Long each hold a membership interest.  At all times relevant this action, Gurney Long has managed Long Investment.

{14}   Carolina Transport is a North Carolina corporation formed and incorporated by Jonathan Long's wife, Meredith Myers Long, who now owns the corporation with her mother.

{15}   Wohlford is a director of Hilco.

{16}   Atkins is Charles Long's daughter.

{17}   Wendi L. Brewer ("Wendi Brewer") is Charles Long's daughter.  Wendi Brewer is married to Michael Brewer.

{18}   Tyra L. Nall ("Nall") is Charles Long's daughter.  Nall served as executor of her father's estate.

## B.  The Stockholder Agreement

{19}   On January 17, 2005, Gurney Long, Charles Long, Jonathan Long, Michaels, Wendi Brewer, Atkins, and Nall signed the Stockholder Agreement.  (*See* Compl. Ex. A. ("Stockholder Agreement").)  Three of Hilco's shareholders, including Doc Long, did not sign the agreement.

{20}   At the time of signing, Gurney Long was Hilco's president and Charles Long was Hilco's operations manager.  Gurney Long, Charles Long, and Doc Long comprised Hilco's board at that time.  Gurney Long signed the Stockholder

Agreement as president on behalf of Hilco. The signature line for Hilco's secretary was left blank. (Stockholder Agreement 12.)

{21} This lawsuit centers around a provision in the Stockholder Agreement that gives Hilco an option to redeem the shares of its stockholders upon the death of either Gurney Long or Charles Long. That provision states that,

> with the consent (but only with the consent) of each of the Long Brothers who is then living, the Corporation (acting by the vote of its Board of Directors pursuant to its bylaws) shall, at all times, have the option to purchase all, but not less than all, of the Shares owned by any Stockholder.

(Stockholder Agreement 6.)

{22} The following provisions of the Stockholder Agreement are also relevant to the lawsuit:

- Hilco is required to deliver written notice to its stockholders upon exercising its option to purchase. (Stockholder Agreement 6.)
- R. Wayne Hutchins, CPA ("CPA Hutchins") will determine the fair market value of the shares to be purchased. (Stockholder Agreement 8.)[3]
- Upon breach of the agreement, the parties to the agreement are entitled to specific performance to enforce the agreement. (Stockholder Agreement 10.)

## C. Interim Stock Conveyances

{23} On June 30, 2005, Charles Long suffered a massive heart attack and died. Nall was appointed as executor of Charles Long's estate. Hilco engaged CPA Hutchins to determine the value of Charles Long's 1,418 shares in Hilco as of the date of his death.

{24} On October 17, 2005, Gurney Long entered into a stock-purchase agreement with Nall to purchase Charles Long's shares. Under that agreement, Gurney Long purchased all 1,418 of Charles Long's shares at the value determined by CPA Hutchins.

---

[3] The parties disagree on whether a stockholder can challenge CPA Hutchins's valuation, and if so, on what grounds. That disagreement will be the subject of a separate order.

{25}   Between December 2005 and January 2009, Wendi Brewer conveyed a total of 224 shares to Michael Brewer in equal halves as custodian for each of their two children.  These 224 shares remain subject to the Stockholder Agreement.

{26}   In 2010, Nall expressed a desire to sell her 223 shares to Hilco.  Hilco engaged CPA Hutchins to determine the redemption price of Nall's shares.  CPA Hutchins produced a valuation report, and Hilco and Nall used the valuation in that report to effectuate Hilco's redemption of Nall's shares.

## D. Hilco's Redemption Rights Under the Stockholder Agreement

{27}   On April 25, 2014, Gurney Long issued a notice of special meeting of the board of directors to convene on April 30, 2014, for the purpose of considering a motion for Hilco to redeem Atkins's and Michael Brewer's Hilco shares.

{28}   On April 28, 2014, Atkins purported to gift all of her Hilco shares to Doc Long.

{29}   At the request of Doc Long, the special meeting was suspended shortly after it began on April 30, 2014.

{30}   The special meeting reconvened on May 9, 2014, with all three board members—Doc Long, Gurney Long, and Wohlford—in attendance.  The board approved motions to formally ratify the Stockholder Agreement, to declare void the attempted April 28, 2014, transfer of Hilco shares by Atkins to Doc Long, and to authorize Hilco to exercise its option to redeem Defendants' Hilco shares.  Hilco provided written notice to Defendants that it was exercising its option to redeem their shares.

{31}   Hilco engaged CPA Hutchins to value Defendants' shares.  After providing an initial report that valued a single share at $2,633.35, and after meeting with Hilco's and Defendants' attorneys, CPA Hutchins issued a revised report on July 21, 2014.  The revised report valued a single share of Hilco stock at $2,998.98.  Hilco scheduled the closing to redeem Defendants' shares for August 15, 2015, at a purchase price of $2,998.98 per share.  Defendants did not attend the closing and have not conveyed any of their shares to Hilco.

{32} Defendants contend that the valuation is unfairly low because it failed to consider transactions between Gurney Long and Jonathan Long and their respective companies. The transactions between Gurney Long and Jonathan Long with their outside companies are the basis of the Third-Party Complaint.

## E. Hilco's Bylaws

{33} As an initial matter, Defendants dispute whether Hilco properly executed the Stockholder Agreement, arguing that the agreement was signed by Hilco's president but not by its secretary, as required by Hilco's bylaws ("Bylaws"). Defendants further contend that Atkins gifted her shares to Doc Long before the Stockholder Agreement was ratified by Hilco's board.

{34} Hilco's Bylaws state, in relevant part, that, "[e]xcept as otherwise provided in these bylaws, the act of the majority of the directors present at a meeting at which a quorum is present shall be the act of the Board of Directors." (Atkins Aff. Ex. 1 ("Bylaws"), art. IV, § 6.)

{35} The Bylaws describe the powers of Hilco's president as follows:

> He shall sign, with the Secretary, and Assistant Secretary, or any other proper officer of the corporation thereunto authorized by the Board of Directors, . . . contracts, or other instruments which the Board of Directors has authorized to be executed, except in cases where the signing and execution thereof shall be expressly delegated by the Board of Directors or by these bylaws to some other officer or agent of the corporation . . . .

(Bylaws art. V, § 6.)

{36} The Bylaws also state that "[t]he Board of Directors may authorize any officer or officers, agent or agents, to enter into any contract or execute and deliver any instrument in the name of and on behalf of the corporation." (Bylaws art. VI, § 1.)

## F. Hilco's Transactions with Third Parties

{37} Defendants contend that Gurney Long and Jonathan Long orchestrated transactions that have diverted value from Hilco.

{38}     Specifically, Defendants claim that Gurney Long formed a separate company, Carolina Transport, and treated that company as his alter ego for purposes of diverting benefits from Hilco at the expense of Hilco's minority shareholders.  They further complain that, as part of the initial startup, Hilco provided free dispatching services and training for Carolina Transport drivers.

{39}     Defendants also point to certain leases between Hilco and Long Investment.

{40}     On July 27, 2009, Hilco entered into a written lease with Long Investment for property located in Kannapolis, North Carolina.  Hilco agreed to pay Long Investment $31,000.00 per month for the first five years of the lease, which Defendants claim is above the market rent price.

{41}     On September 1, 2010, Hilco entered into a written lease with Long Investment for property located in Duncan, South Carolina.  Hilco agreed to pay Long Investment $3,500.00 per month for the first five years of the lease, which Defendants claim is above the market rent price.

{42}     Defendants allege that, in contrast to Hilco's leases with companies controlled solely by Gurney Long or Jonathan Long, Hilco's leases with other entities contain terms that are much more favorable to Hilco.  Defendants point to a lease that was executed on August 28, 1998, between Hilco and CGP Properties, LLC ("CGP") for property located in Greensboro, North Carolina.  CGP is a North Carolina limited liability company owned by Doc Long, Gurney Long, Hill, Atkins, Wendi Brewer, and Nall.  Hilco agreed to pay $25,000.00 per month to CGP for the first six years of the lease.

## G. The Third-Party Complaint

{43}     The Third-Party Complaint asserts direct claims and, alternatively, a derivative claim on behalf of Hilco.

{44}     The Third-Party Complaint is not verified.

{45}     Defendants allege that, before the Third-Party Complaint was filed, they made a demand on Hilco to collect money owed to the corporation, and that

Hilco refused to take action. Defendants claim that a letter dated August 7, 2014, from Defendants' attorney to Hilco's outside counsel constituted a demand on Hilco. (Third-Party Compl. Ex. A.) That letter stated, "[p]lease accept this letter as a demand, under [section] 55-7-42, that the corporation pursue its remedies against those who have misappropriated corporate assets." (Third-Party Compl. Ex. A.)

{46} Outside counsel for Hilco replied to Defendants' attorney in a letter dated August 8, 2014. (Third-Party Compl. Ex. B.) This letter made no reference to formal corporate action, nor did it acknowledge that a statutory demand had been made on Hilco in advance of a derivative action. The letter did assert that Defendants' complaints were untimely and that the stock redemption should move forward.

### III. ANALYSIS

#### A. Defendants' Derivative Claim

{47} Although Third-Party Defendants have not challenged Defendants' attempt to assert derivative claims, the Court can examine subject-matter jurisdiction on its own motion. *See Lemmerman v. A.T. Williams Oil Co.*, 318 N.C. 577, 580, 350 S.E.2d 83, 85–86 (1986).

{48} A shareholder cannot commence a derivative action until a written demand has been made on the corporation to take action and ninety days have passed since the date of the demand. N.C. Gen. Stat. § 55-7-42 (2015). The ninety-day period may be shortened if the shareholder is notified that the corporation rejected the demand before ninety days has expired, or if a court allows for a shorter period. *Id.* § 55-7-42(2). The demand requirement is "an absolute condition precedent to the plaintiff's right to bring the action, [and] the complaint will be dismissed if the requirement is not satisfied." Russell M. Robinson, II, *Robinson on North Carolina Corporation Law* § 17.03[1], at 17-13 (7th ed. 2015).

{49} In addition to the demand requirement, a complaint that asserts a derivative claim must be verified by oath. N.C. R. Civ. P. 23(b).

{50} Here, the Third-Party Complaint was not verified.

{51}    The Court further concludes that the letter from Defendants' attorney to Hilco's outside counsel did not constitute a proper demand on Hilco, and the Court finds nothing on the record to show that Hilco's outside counsel was authorized to accept or reject a demand on behalf of Hilco.

{52}    The letter from Defendants' attorney was addressed to Hilco's outside counsel, not to Hilco through its officers.  The reply was written by Hilco's outside counsel.  A proper demand must be addressed to someone with authority to act on behalf of the corporation, and a response is effective only if it is written by someone with authority to act on behalf of the corporation.  *See Petty v. Morris*, 2014 NCBC LEXIS 67, at *17–18 (N.C. Super. Ct. Dec. 16, 2014).  The Court finds nothing on the record to indicate that Hilco's outside counsel had authority to bind Hilco or that he purported to do so.

{53}    Because the Third-Party Complaint was not verified and no proper demand was made on Hilco, the Court holds that Defendants lack standing to bring a derivative action on behalf of Hilco.

## B.  Defendants' Standing to Bring Direct Claims

{54}    Third-Party Defendants challenge the merits of the section 75-1.1 and unjust-enrichment claims brought against them.  They do not expressly challenge Defendants' standing to bring these direct claims.  Again, because standing is a prerequisite to the Court's exercise of subject-matter jurisdiction, the Court may raise this issue on its own motion.

{55}    A shareholder generally has no standing to bring a direct action against third parties to recover for wrongs committed against the corporation.  *Barger v. McCoy Hillard & Parks*, 346 N.C. 650, 658, 488 S.E.2d 215, 219 (1997).  Indeed, it is well-established that "shareholders cannot pursue individual causes of action against third parties for wrongs or injuries to the corporation that result in the diminution or destruction of value of their stock."  *Id.*  Two exceptions to this rule are (1) where a special duty exists between the third-party wrongdoer and the

shareholder, and (2) where the injury suffered by the shareholder was separate and distinct from the injury suffered by other shareholders. *Id.*

{56}    The North Carolina Court of Appeals has recognized that, in certain limited circumstances, minority shareholders in a close corporation can assert derivative claims in a direct action against the majority shareholders without a showing of the *Barger* exceptions. *Norman v. Nash Johnson & Sons' Farms, Inc.*, 140 N.C. App. 390, 396, 537 S.E.2d 248, 254 (2000). In *Norman*, the court of appeals allowed minority shareholders in a closely held family business to bring a direct action against the controlling majority shareholder. *Id.* Specifically, the court of appeals allowed the minority shareholders to assert direct claims against corporations that were controlled by the majority owner and allegedly formed and operated for the purpose of diverting corporate opportunities from one corporation to another for the financial gain of the majority owner. *Id.* Under these specific facts, the *Norman* court held that a director owes fiduciary duties to both the corporation and the minority shareholders. *Id.*

{57}    Here, Defendants allege that Gurney Long, Jonathan Long, and Wohlford, as Hilco's directors, "have owed and do owe Hilco and its Stockholders statutory and common law fiduciary duties of trust, loyalty, due care, good faith, and fair dealing." (Third-Party Compl. ¶ 37.) Third-Party Defendants admit that Gurney Long, Jonathan Long, and Wohlford "owe certain duties as defined by law to the stockholders of Hilco." (Answer to Third-Party Compl. ¶ 37.) It is not clear, however, from Third-Party Defendants' answer whether they concede that Gurney Long, Jonathan Long, and Wohlford owe the alleged fiduciary duties to Defendants as minority shareholders.

{58}    Other allegations in the Third-Party Complaint assert that Jonathan Long and Wohlford cooperated with Gurney Long, who had majority control to accomplish the wrongs of which Defendants complain as minority shareholders.

{59}    While the Court believes that *Norman* should be narrowly read, it finds that Defendants have alleged sufficient facts that, under *Norman*, establish standing to assert direct claims for injuries that Hilco suffered in connection with

Third-Party Defendants' misuses of control. Significantly, *Norman* arose in the context of a Rule 12(b)(6) motion. *See Blythe v. Bell*, 2013 NCBC LEXIS 17, at *16 (N.C. Super. Ct. Apr. 8, 2013). The Court's subject-matter jurisdiction is subject to constant evaluation, and the Court reserves the right to revisit the issue of standing upon a more-developed factual record.

{60} For purposes of Third-Party Defendants' Motion under Rule 12(b)(6), the Court finds that Defendants have adequately invoked the Court's subject-matter jurisdiction to consider direct claims alleged in the Third-Party Complaint.

## C. Third-Party Defendants' Rule 12(b)(6) Motion

### 1. Legal Standard

{61} The Court should grant a motion to dismiss under Rule 12(b)(6) when any of three things is true: (1) no law supports the plaintiff's claim, (2) the complaint does not plead sufficient facts to state a legally sound claim, or (3) the complaint discloses a fact that defeats the plaintiff's claim. *Oates v. JAG, Inc.*, 314 N.C. 276, 278, 333 S.E.2d 222, 224 (1985). When the Court reviews a complaint under Rule 12(b)(6), it accepts the factual allegations of the complaint as true without assuming the veracity of Plaintiff's legal conclusions. *See Walker v. Sloan*, 137 N.C. App. 387, 392, 592 S.E.2d 236, 241 (2000).

### 2. The Section 75-1.1 Claim

{62} Third-Party Defendants attack Defendants' section 75-1.1 claims against Gurney Long, Jonathan Long, and Carolina Transport, first on the ground that the claims do not arise "in commerce," and second on the basis that Carolina Transport has not engaged in conduct that is actionable under section 75-1.1.

{63} To state a claim under section 75-1.1, Defendants must allege that Third-Party Defendants (1) "committed an unfair or deceptive act or practice," (2) the unfair or deceptive act or practice was "in or affecting commerce," and (3) Third-Party Defendants' "act proximately caused injury" to Defendants. *Bumpers v.*

*Cmty. Bank of N. Va.*, 367 N.C. 81, 88, 747 S.E.2d 220, 226 (2013) (quoting *Dalton v. Camp*, 353 N.C. 647, 656, 548 S.E.2d 704, 711 (2001)).[4]

### i.  Conduct "In or Affecting Commerce"

{64}  Conduct must be "in or affecting commerce" to fall within the scope of section 75-1.1.  Commerce includes "all business activities, however denominated," but not "professional services rendered by a member of a learned profession."  N.C. Gen. Stat. § 75-1.1(b).  "Business activities" have further been defined as "the manner in which businesses conduct their regular, day-to-day activities, or affairs, such as the purchase and sale of goods, or whatever other activities the business regularly engages in and for which it is organized."  *HAJMM Co. v. House of Raeford Farms, Inc.*, 328 N.C. 578, 594, 403 S.E.2d 483, 493 (1991).

{65}  Two exceptions to the "in or affecting commerce" prong of section 75-1.1 are the employer–employee and "internal corporate governance" exceptions.  Third-Party Defendants argue that Defendants' section 75-1.1 claim fails under both exceptions.

### a.  The Employer–Employee Exception

{66}  Defendants claim that Jonathan Long was paid an unfairly high salary and that both Gurney Long and Jonathan Long misused their positions with Hilco to set up, operate, and contract with other corporations in which they, but not Defendants, had an ownership interest.

{67}  As a general rule, claims that arise in the employer–employee context are outside the scope of chapter 75.  *See Dalton*, 353 N.C. at 658, 548 S.E.2d at 711.  The general rule may not apply, however, where "the claimant . . . make[s] a showing of business related conduct that is unlawful or of deceptive acts that affect

---

[4] The Court does not further consider the "injury" element of section 75-1.1 at this time.  While Defendants have clearly alleged an injury to Hilco, it is less clear how Defendants have suffered an injury that is separate and distinct from the injury to the corporation.  As a result, the Court has not determined whether the section 75-1.1 claim is derivative rather than direct.  *Norman* allowed the section 75-1.1 claims to proceed as direct claims under the particular circumstances presented by the facts of that case.  *See Norman*, 140 N.C. App. at 406, 537 S.E.2d at 259.

commerce beyond the employment relationship." *Gress v. Rowboat Co.*, 190 N.C. App. 773, 776, 661 S.E.2d 278, 282 (2008); *see also Maurer v. SlickEdit, Inc.*, 2005 NCBC LEXIS 2, at *18–19 (N.C. Super. Ct. May 16, 2005) (listing cases that fell outside the scope of the employer–employee exception and noting that exceptions to the employer–employee exception are "intensely fact specific"). Courts have declined to apply the employer–employee exception in cases where fiduciary duties are owed among the parties and in cases that involve self-dealing conduct. *See, e.g.*, *Sara Lee Corp. v. Carter*, 351 N.C. 27, 34, 519 S.E.2d 308, 312 (1999); *Songwooyarn Trading Co. v. Sox Eleven, Inc.*, 213 N.C. App. 49, 56–57, 714 S.E.2d 162, 167–68 (2011).

{68}     Under the liberal pleading standard of Rule 12(b)(6), the Court is unable to conclude as a matter of law that the employer–employee exception removes this claim from the scope of section 75-1.1.

### b.  The "Internal Corporate Governance" Exception

{69}     Third-Party Defendants argue that the dispute in this matter is a disagreement about the proper interpretation of the Stockholder Agreement—a matter of internal governance that falls outside the scope of section 75-1.1. *See White v. Thompson*, 364 N.C. 47, 52–53, 691 S.E.2d 676, 679–80 (2010) (explaining that "unfair or deceptive practices occurring in the conduct of extraordinary events of, or solely related to the internal operations of, a business" will not trigger liability under section 75-1.1).

{70}     The Court would be inclined to agree with Third-Party Defendants if the claim were limited to whether the Stockholder Agreement was first properly executed, and if so, whether procedures set out by the agreement were followed to establish a binding valuation. But under the liberal pleading standard of Rule 12(b)(6), the Court cannot conclude that Defendants' section 75-1.1 claim is sufficiently narrow to warrant dismissal under the "internal corporate governance" exception.

{71}   The Court is again guided by *Norman.  See Norman*, 140 N.C. App. at 392, 417, 537 S.E.2d at 251, 266 (allowing minority shareholders to seek redress under section 75-1.1 for the asserted misuse of majority control).  *Cf. Seraph Garrison, LLC v. Garrison*, 2014 NCBC LEXIS 28, at *20–21 (N.C. Super. Ct. June 26, 2014) (concluding that facts were not "in or affecting commerce" under section 75-1.1 where there was no evidence that the defendant competed with a corporation using any of the defendant's outside businesses, and distinguishing these facts from the facts in *Norman*), No. 14-1166 (N.C. Ct. App. argued Mar. 17, 2015).  *But see Powell v. Dunn*, 2014 NCBC LEXIS 3, at *11 (N.C. Super. Ct. Jan. 28, 2014) (holding that the section 75-1.1 claim was not "in or affecting commerce" because the alleged breaches of fiduciary duties owed to common shareholders were matters internal to the corporation that did not concern the company's interaction with other outside market participants).  Ultimately, a more-developed factual record may support the Court's further consideration of this issue.

{72}   In sum, the Court declines to apply the exceptions to section 75-1.1 liability for employer–employee relationships or for matters of internal governance, and concludes that Defendants have adequately alleged conduct that is "in or affecting commerce" under section 75-1.1.

### ii.   Carolina Transport's Conduct

{73}   Third-Party Defendants do not challenge the section 75-1.1 claim against Gurney Long and Jonathan Long beyond the "in or affecting commerce" requirement.  They contend that, in addition to failing the "in or affecting commerce" requirement, Defendants' section 75-1.1 claim against Carolina Transport fails because Carolina Transport did not engage in any conduct that is actionable under section 75-1.1.

{74}   Defendants do not directly allege that Carolina Transport made misrepresentations, but they contend that Carolina Transport, as Gurney Long's alter ego, participated in a scheme to wrongfully divert value from Hilco to Carolina Transport.  In other words, Defendants claim that Carolina Transport should be

held liable on a reverse veil-piercing theory. *See Reeger Builders, Inc. v. J.C. Demo Ins. Grp., Inc.*, No. COA13-622, 2014 N.C. App. LEXIS 259, at *12 (N.C. Ct. App. Mar. 4, 2014) (explaining that "reverse-piercing" occurs when a court disregards the corporate form of a defendant to satisfy the debts of a shareholder) (citing *Fischer Inv. Capital, Inc. v. Catawba Dev. Corp.*, 200 N.C. App. 644, 650, 689 S.E.2d 143, 147 (2009)).

{75} Specifically, Defendants allege that Carolina Transport participated in an unlawful scheme that included the following acts:

- Hilco allowed Carolina Transport to use its facilities for little or no rent.
- Hilco provided training for Carolina Transport's drivers for little or no compensation.
- Hilco provided dispatching services to Carolina Transport with little or no compensation.
- Hilco's capital or credit was used to acquire trucks for Carolina Transport and to purchase tires, fuel, and other necessary items for Carolina Transport's continued operations.
- Customer calls for Hilco services were directed to Carolina Transport trucks and drivers.
- Carolina Transport used Hilco's management, office staff, computer systems, and other assets without adequate compensation.

(Third-Party Compl. ¶¶ 21–27.)

{76} Defendants further contend that Carolina Transport's actions were deceptive because, in the interactions between Carolina Transport and Hilco, neither Gurney Long nor any officer or director of Hilco sought the approval of Hilco's disinterested shareholders or directors.

{77} Unfair or deceptive conduct that may be actionable under section 75-1.1 can be divided into five categories: (1) "general 'unfair' conduct that 'offends public policy . . . [or] is immoral, unethical, oppressive, unscrupulous, or substantially injurious to consumers,'" (2) "'deceptive' misrepresentations that have the capacity to deceive the average person," (3) "per se violations of [section] 75-1.1

established upon proof of a statutory or regulatory violation or the commission of certain torts," (4) "a breach of contract accompanied by aggravating circumstances," and (5) "anti-competitive conduct." *Sparks v. Oxy-Health, LLC*, No. 5:13-CV-649-FL, 2015 U.S. Dist. LEXIS 134469, at *85 (E.D.N.C. Sept. 15, 2015) (first alteration in original) (quoting *Walker v. Fleetwood Homes of N.C., Inc.*, 362 N.C. 63, 72, 653 S.E.2d 393, 399 (2007)).

{78}    Here, the alleged unfair or deceptive conduct falls under the first two categories defined in *Sparks*: general "unfair" conduct and deceptive misrepresentations.

{79}    The Court is again guided by *Norman*, where the court of appeals allowed minority shareholders' section 75-1.1 claims to proceed in a direct action against the corporations that were allegedly formed by the majority owner of the corporation. *Norman*, 140 N.C. App. at 406, 537 S.E.2d at 259. The Court concludes that Defendants have adequately stated a section 75-1.1 claim against Carolina Transport based on an unfair-conduct theory to survive dismissal under Rule 12(b)(6).[5]

### 3. The Unjust-Enrichment Claim

{80}    Defendants bring their unjust-enrichment claim against Gurney Long, Jonathan Long, Long Investment, Carolina Transport, and Michaels.

{81}    To state a claim for unjust enrichment, "a plaintiff must allege that property or benefits were conferred on a defendant under circumstances which give rise to a legal or equitable obligation on the part of the defendant to account for the benefits received." *Id.* at 417, 537 S.E.2d at 266.

---

[5] It is not necessary for the Court to separately analyze whether Defendants have sufficiently alleged deceptive practices under section 75-1.1. More-detailed allegations may be required for a section 75-1.1 claim to survive dismissal under Rule 12(b)(6) when the claim is predicated on allegations of deceptive conduct. *See, e.g.*, *Topshelf Mgmt., Inc. v. Campbell-Ewald Co.*, No. 1:14cv1013, 2015 U.S. Dist. LEXIS 100910, at *20 (M.D.N.C. Aug. 3, 2015) (holding that allegations of deceptive conduct under section 75-1.1 must be pleaded with particularity); *accord Fernandez Cmty. Ctr., LLC v. Toshiba Bus. Sols. (USA), Inc.*, No. 5:14-CV-692-F, 2015 U.S. Dist. LEXIS 113194, at *7 n.1 (E.D.N.C. Aug. 26, 2015).

{82}    The Court again must follow *Norman* at this early pleading stage. Under *Norman*, Defendants' allegations that Gurney Long and Jonathan Long, as majority shareholders, were unjustly enriched in connection with alleged breaches of their fiduciary duties to minority shareholders are sufficient to survive the motion to dismiss. *Id.* Likewise, Defendants' allegations that Long Investment and Carolina Transport were unjustly enriched as alter egos of Gurney Long and Jonathan Long are sufficient to survive Third-Party Defendants' Motion. *See id.*

{83}    In contrast, the claims against Michaels of improper benefit are thin, at best, and are limited to a conclusory allegation that Michaels "received goods, services, payments, and other assets of Hilco to which [she] was not entitled." (Third-Party Compl. ¶ 32.)  Defendants do not allege that Micheals owed a fiduciary duty to either Hilco or its shareholders.  Accordingly, while the unjust-enrichment claim against Michaels may survive, it is limited to the disgorgement of improper and disproportionate distributions of value in Hilco.

D.  Atkins's Rule 12(c) Motion

1.  Legal Standard

{84}    A motion for judgment on the pleadings under Rule 12(c) "is the proper procedure when all the material allegations of fact are admitted in the pleadings and only questions of law remain." *Ragsdale v. Kennedy*, 286 N.C. 130, 137, 209 S.E.2d 494, 499 (1974).  Judgment on the pleadings is generally inappropriate when the pleadings fail to resolve all the factual issues. *Id.*

{85}    When the Court reviews a complaint under Rule 12(c), it may consider documents "attached to and incorporated within a complaint." *Weaver v. Saint Joseph of the Pines, Inc.*, 187 N.C. App. 198, 204, 652 S.E.2d 701, 707 (2007). However, "a document attached to the moving party's pleading may not be considered in connection with a Rule 12(c) motion unless the non-moving party has made admissions regarding the document." *Id.*  The Court "is required to view the facts and permissible inferences in the light most favorable to the nonmoving party." *Ragsdale*, 286 N.C. at 137, 209 S.E.2d at 499.  Thus, a Rule 12(c) motion

should be denied "unless it is clear that plaintiff is not entitled to any relief under any statement of the facts." *Praxair, Inc. v. Airgas, Inc.*, 1999 NCBC LEXIS 5, at *8 (N.C. Super. Ct. May 26, 1999).

## 2. Arguments

{86}    Atkins moves for judgment on the pleadings on Hilco's claim for specific performance of the Stockholder Agreement.  Specifically, Atkins argues that she withdrew her assent and repudiated the Stockholder Agreement when she conveyed her Hilco shares to Doc Long on April 28, 2014.  Thus, she argues, Hilco's attempt to ratify the Stockholder Agreement on May 9, 2014, came too late.

{87}    Atkins's Motion turns on whether the Court can determine the following issues from the pleadings: (1) whether Hilco adopted the Stockholder Agreement before Atkins attempted to convey her shares; (2) alternatively, whether Atkins is estopped from denying the enforceability of the Stockholder Agreement; and (3) alternatively, whether Atkins effectively withdrew her assent and repudiated the Stockholder Agreement before it was adopted by Hilco.

### i.    Gurney Long's Authority to Bind Hilco to the Stockholder Agreement

{88}    Atkins contends that Gurney Long had no authority to bind Hilco to the Stockholder Agreement absent the signature of Hilco's secretary.  Atkins relies on Article V of the Bylaws, which grants Hilco's president the power to sign contracts on behalf of the corporation when the president signs with "the Secretary, and Assistant Secretary, or any other proper officer of the corporation thereunto authorized by the Board of Directors."  (Bylaws art. V, § 6.)

{89}    However, Article VI of the Bylaws also provides that "[t]he Board of Directors may authorize any officer . . . to enter into any contract or execute and deliver any instrument in the name of and on behalf of the corporation."  (Bylaws art. VI, § 1.)  Article IV further states that, "[e]xcept as otherwise provided in these bylaws, the act of the majority of the directors present at a meeting at which a quorum is present shall be the act of the Board of Directors."  (Bylaws art. IV, § 6.)

Even though Hilco's secretary did not sign the Stockholder Agreement, the agreement was signed by two of Hilco's three directors—Gurney Long and Charles Long—and their signatures constituted a majority.

{90} The Court makes no findings, but concludes that the pleadings could support findings that Hilco adopted the Stockholder Agreement at its board meeting on May 9, 2014, that all board members were aware of the terms of the Stockholder Agreement, that the members made no objection to Gurney Long's authority to sign the Stockholder Agreement on behalf of Hilco, and that Gurney Long was therefore authorized to bind Hilco under the terms of the Bylaws.

{91} A corporation's bylaws are treated like a contract. *See Crider v. Jones Island Club, Inc.*, 147 N.C. App. 262, 267, 554 S.E.2d 863, 866 (2001). "An ambiguity exists in a contract if the 'language of a contract is fairly and reasonably susceptible'" to two different constructions. *Id.* (quoting *Barrett Kays & Assocs., P.A. v. Colonial Bldg. Co. of Raleigh*, 129 N.C. App. 525, 528, 500 S.E.2d 108, 111 (1998)). If a contract is ambiguous, "interpretation is a question of fact." *Id.* at 266–67, 554 S.E.2d at 866.

{92} The Court concludes that there are unresolved questions of fact regarding the binding effect of Gurney Long's signature to the Stockholder Agreement. Thus, this issue is not proper for judgment on the pleadings.

ii. Ratification of the Stockholder Agreement

{93} Atkins contends that the earliest possible time that Hilco's board could have ratified the Stockholder Agreement was at its special meeting on May 9, 2014, not when Gurney Long signed the agreement in 2005. Hilco argues, rather, that its board ratified the Stockholder Agreement by a continuing course of conduct that began when the agreement was executed in 2005.

{94} Ratification is "the affirmance by a person of a prior act which did not bind him but which was done or professedly done on his account, whereby the act . . . is given effect as if originally authorized by him." *Walker*, 137 N.C. App. at 397, 529 S.E.2d at 244 (quoting *Espinosa v. Martin*, 135 N.C. App. 305, 308, 520

S.E.2d 108, 111 (1999)). To establish ratification, a plaintiff must show that the principal had full knowledge of all material facts and that the principal intended to ratify the act. *Bell Atl. Tricon Leasing Corp. v. DDR, Inc.*, 114 N.C. App. 771, 776, 443 S.E.2d 374, 377 (1994). "Ratification 'may be expressed or implied, and intent may be inferred from failure to repudiate an unauthorized act . . . or from conduct on the part of the principal which is inconsistent with any other position than intent to adopt the act.'" *Id.* at 776–77, 443 S.E.2d at 377 (quoting *Am. Travel Corp. v. Cent. Carolina Bank*, 57 N.C. App. 437, 442, 291 S.E.2d 892, 895 (1982)).

{95}    To grant Atkins's Motion under Rule 12(c), the Court would have to disregard the potential impact of the nine-year period of silence during which the Stockholder Agreement went unchallenged. *See Walker v. McLaurin*, 227 N.C. 53, 55, 40 S.E.2d 455, 457 (1946) (holding that there was a material issue of fact as to the validity of a lease where the defendants did not disaffirm the agreement for a period of more than three years). It is well-established under North Carolina law that when the officer of a corporation enters into a contract on behalf of the corporation without the authority to do so, "and the corporation receives and retains the benefits of the contract after acquiring knowledge of the circumstances attending its execution, it thereby ratifies the contract and makes it good by adoption." *Citizens' Lumber Co. v. Elias*, 199 N.C. 103, 110, 154 S.E. 54, 58 (1930) (citation omitted). Where the corporation "accept[s] the benefits of the contract . . . with full knowledge on the part of the directors," the contract is deemed ratified by the board of directors on the corporation's behalf. *Id.*

{96}    Determining whether an agreement has been ratified requires a fact-intensive inquiry that is generally more appropriate for the trier of fact than for summary judgment. *See McLaurin*, 227 N.C. at 56, 40 S.E.2d at 457. A Rule 12(c) motion must be viewed with at least an equal level of scrutiny. Even if the Court errs in holding that the facts could support a finding that Gurney Long had authority to bind Hilco to the Stockholder Agreement, there are further facts that could support a finding that Hilco ratified the agreement before Atkins attempted to convey her Hilco shares.

### iii. Whether Atkins Is Estopped from Challenging the Stockholder Agreement

{97} Finally, Plaintiffs alternatively argue that the Court should deny Atkins's Motion because there is adequate evidence to estop Atkins from challenging the Stockholder Agreement and because Atkins waived her right to challenge the agreement.

### a. Quasi-Estoppel

{98} The doctrine of quasi-estoppel prevents a party who "accepts a transaction or instrument and then accepts benefits under it" from taking "a later position inconsistent with the prior acceptance of that same transaction or instrument." *Cleveland Constr., Inc. v. Ellis-Don Constr. Inc.*, 210 N.C. App. 522, 530, 709 S.E.2d 512, 519 (2011) (quoting *Whitacre P'ship v. Biosignia, Inc.*, 358 N.C. 1, 18, 591 S.E.2d 870, 882 (2004). Quasi-estoppel applies even where a benefit is accepted involuntarily. *Shell Island Homeowners Ass'n v. Tomlinson*, 134 N.C. App. 217, 226, 517 S.E.2d 406, 413 (1999). For the doctrine of quasi-estoppel to apply, the benefit accepted must be sufficient to support an estoppel. *See Vill. of Pinehurst v. Reg'l Invs. of Moore, Inc.*, 330 N.C. 725, 730, 412 S.E.2d 645, 647 (1992). For example, a person cannot be estopped by accepting a benefit that she is already legally entitled to receive. *Beck v. Beck*, 175 N.C. App. 519, 525, 624 S.E.2d 411, 415 (2006).

{99} Hilco alleges that, as a shareholder, Atkins benefitted from Hilco's redemption of Charles Long's and Nall's shares—transactions that Hilco claims were conducted under the terms of the Stockholder Agreement. Although Atkins may argue that she did not receive benefits adequate to support a quasi-estoppel claim, that argument is based on disputed facts. Thus, it would be improper for the Court to grant a Rule 12(c) motion on the basis of quasi-estoppel.

### b. Waiver

{100} Hilco claims that Atkins waived any challenge to the Stockholder Agreement by failing to contest the validity of the agreement in the nine years during which transactions took place under the terms of the agreement. The Court likewise concludes that unresolved issues of fact preclude the Court from granting Atkins's Motion.

### iv. Repudiation of the Stockholder Agreement and Atkins's Attempt to Convey Her Shares to Doc Long

{101} Atkins claims that she repudiated the Stockholder Agreement when she delivered a letter of transfer to Doc Long on April 28, 2014, before Hilco's board ratified the agreement at its special meeting on May 9, 2014. Atkins relies on *Normile v. Miller*, in which the North Carolina Court of Appeals stated that "[a]n offeree's power of acceptance is terminated when the offeror takes definite action inconsistent with an intention to enter into the proposed contract and the offeree acquires reliable information to that effect." 63 N.C. App. 689, 694, 306 S.E.2d 147, 150 (1983) (quoting Restatement (Second) of Contracts § 43 (Am. Law Inst. 1981)), *modified and aff'd*, 313 N.C. 98, 326 S.E.2d 11 (1985). Atkins's argument depends on an assumption that Hilco did not ratify the Stockholder Agreement before May 9, 2014. As the Court states above, however, the issue of ratification is a question of fact.

{102} In *Normile*, the plaintiffs made an offer to buy real property, with a condition that the offer had to be accepted by 5:00 p.m. the next day. *Id.* at 690–91, 306 S.E.2d at 148. The seller changed some of the key terms of the offer and returned it to the plaintiffs as a counteroffer. *Id.* at 691, 306 S.E.2d at 148. The following day, the seller offered the property to another potential purchaser, who immediately accepted. *Id.* at 691, 306 S.E.2d at 149. Later that same day, the seller's agent notified the plaintiffs that the counteroffer had been revoked. *Id.* at 691–92, 306 S.E.2d at 149. In ruling that no valid contract existed between the plaintiffs and the seller, the court of appeals reasoned that, by changing the terms

of the offer, the seller had rejected its terms, and the plaintiffs had failed to accept the counteroffer prior to receiving notice that the seller had manifested an intention to sell the real property to another party. *Id.* at 694, 306 S.E.2d at 150.

{103} The dispute in this matter is factually distinguishable from *Normile*. Here, Atkins and the other shareholders signed the Stockholder Agreement when the agreement was presented in 2005 and made no attempt to change any terms in the agreement. Conversely, here, Atkins assented to the terms of the Stockholder Agreement when she signed it.

{104} The Stockholder Agreement, if valid, prohibits the transfer of shares without express permission from Gurney Long. (Stockholder Agreement 2.) The absence of the legend on the stock certificates does not affect this restriction. The pleadings allege that Doc Long, as an officer of Hilco, had actual knowledge of this restriction in the Stockholder Agreement. Failing to include the legend does not necessarily make the conveyance valid when the transferee is aware of the restriction. *See Lynn v. Lynn*, 202 N.C. App. 423, 435–36, 689 S.E.2d 198, 207 (2010) (holding that the absence of a legend indicating a restriction on transfer of shares was not determinative of the validity of the transfer where the transferee was "aware of the clear intent of the [Shareholder] Agreement and the limitations on transfer").

{105} In sum, the Court concludes that unresolved issues of material fact preclude it from granting judgment on the pleadings. Accordingly, Atkins's Motion is DENIED.

## IV.   CONCLUSION

{106} For the foregoing reasons, it is ORDERED that:
1. Defendants' derivative claims are DISMISSED for lack of standing.
2. Third-Party Defendants' Motion is DENIED.
3. Atkins's Motion is DENIED.

This the 15th day of January, 2016.


                                    /s/ James L. Gale
                                    James L. Gale
                                    Chief Special Superior Court Judge
                                      for Complex Business Cases